**In re Robert H. WOODFORD, Debtor.**

**Bankruptcy No. 85–01050.**

United States Bankruptcy Court,
N.D. New York.

Jan. 26, 1987.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y., for trustee; Mary Lannon Fangio, of counsel.

David W. Pelland, Syracuse, N.Y., for debtor.

## MEMORANDUM–DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIMED EXEMPTION

STEPHEN D. GERLING, Bankruptcy Judge.

Robert H. Woodford ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–151326, ("Code") on November 25, 1985. On January 23, 1986, the Trustee filed his objection to Debtor's claimed exemption of his interest in a retirement fund. The matter was submitted upon the memoranda of counsel.

### FINDINGS OF FACT

At the time he filed his petition, Debtor was 58 years old, having been born on January 14, 1927. On May 31, 1985, Debtor had withdrawn as a partner from the law firm of Mackenzie, Smith, Lewis, Michell & Hughes, Esqs. ("Mackenzie firm"). Thereafter, until January 1, 1986, Debtor was employed by the Mackenzie firm as an attorney. Since that time, Debtor has continued to practice law as an attorney associated with the offices of William Weisberg, P.C. Debtor was married at the time of his individual filing, and his spouse was unemployed. Two children, ages unknown, resided at Debtor's home.

Debtor received his discharge by Order dated April 8, 1986. Debtor's Schedule of Current Income and Expenditures recites a net monthly income of $2,942.24. Debtor listed the following monthly expenditures:

| | |
|---|---:|
| Mortgage payment | $ 699.00 |
| Electricity | 40.00 |
| Heat | 210.00 |
| Telephone | 36.00 |
| Food | 460.00 |
| Laundry & cleaning | 60.00 |
| Newspapers, periodicals, books | 40.00 |
| Medical/drug expenses | 100.00 |
| Insurance: | |
|    Auto ($760.00 per year) | |
|    Other (undefined) ($1,640.00 per year) | |
|    Total | 200.00 |
| Car payment | 391.00 |
| Transportation expenses | 90.00 |
| Recreation | 100.00 |
| Real estate taxes | 200.00 |
| Misc. contributions, Christmas gifts, vacations (est.) | 100.00 |
| Contribution to in-laws' rent | 200.00 |
| Total monthly expenditures | $2,926.00 |

As of December 31, 1985, Debtor had an interest in a Retirement Plan and Trust Agreement ("Plan") established by the MacKenzie firm in the amount of $116,137.17.[1] Debtor's rights in the Plan are 100% vested (Debtor's memorandum, Exhibit B), and the Plan is a qualified plan pursuant to the terms of the Internal Reve-

---

1. By Order dated May 5, 1986, Debtor was authorized to transfer the amount remaining in the Plan to an individual retirement account supervised by Dean Witter Reynolds, Inc. The funds in this account were not to be released to Debtor's use until further order of the court, and/or final determination of the Trustee's objection to the claimed exemption.

nue Code. (Debtor's memorandum, Exhibit D.).

In addition to his interest in the Plan, Debtor claimed as exempt property, pursuant to Code § 522, and N.Y. Debt. & Cred. Law § 282 (McKinney Supp. 1986):

| | |
|---|---:|
| Interest in residence | $10,000.00 |
| Household goods | 3,500.00 |
| Wearing apparel | 400.00 |
| 1981 Cadillac | 8,250.00 |

The 1981 Cadillac was collateral for a secured claim of the Key Bank in the amount of $11,788.00. Debtor had initially indicated an intention to reaffirm this obligation, (Statement of Intention Re: Secured Consumer Debts) yet he did not file an agreement pursuant to Code § 524(c)(3) prior to his discharge. The Trustee abandoned the estate's interest in the automobile pursuant to Code § 554(a) on January 8, 1986, at that time indicating $12,197.42 as the net amount due on the loan. Debtor indicates he was forced to surrender the automobile. (Debtor's memorandum at p. 7).

Debtor's counsel revealed that a sale of Debtor's residence was contemplated. (Debtor's memorandum at p. 2). The residence is collateral for the secured claims of the Onondaga Savings Bank in the total amount of $64,500.00. Debtor believes the market value of the home to be $110,-000.00. (Schedule A-2).

As indicated, the Plan balance as of December 13, 1985 was $116,137.17. Debtor alleges that if these funds were used to purchase a Joint Variable Immediate annuity, it would result in lifetime monthly benefits of $776.60. (Debtor's memorandum, Exhibit C). No issue has been raised as to special health concerns or needs of Debtor or his dependents.

## ARGUMENTS

The Trustee argues that the Plan is not exempt because it was established while Debtor was an insider. N.Y. Debt. & Cred.Law § 282(2)(e)(i) (McKinney Supp. 1986); (Code § 522(d)(10)(E)(i)). The Trustee contends Debtor has failed to prove the funds in the Plan are necessary for his support or that of his dependents. In a reply memorandum, (filed September 23, 1986), the Trustee, for the first time since his objection was filed, contends that a hearing is necessary to resolve the issue of the Plan's relationship to the Debtor's support.[2]

Debtor argues that all three provisions of N.Y. Debt. & Cred.Law § 282(2)(e)(i)-(iii) (McKinney Supp. 1986) must be met before the exemption is to be denied. Debtor states that the burden of proof is upon the Trustee to show the exemption is improperly claimed, and that in any event, the funds in the Plan are necessary for the Debtor's support. Debtor contends the Plan is not property of the estate as he had no right to withdraw funds therefrom until he either left the employ of the Mackenzie firm and thereafter attained age 59 ½ years, or re-

---

**2.** The record should reflect that the Trustee's objection was originally filed on January 23, 1986, and the matter set for initial hearing on February 18, 1986. The Trustee requested an adjournment to March 18, 1986. On that date, the Trustee and Debtor's counsel requested an adjournment to April 29, 1986. On that date, the parties indicated that the matter would submitted upon the memoranda of counsel. A deadline of May 13, 1986 was set for receipt of Trustee's memorandum, and that of May 20, 1986 for Debtor's. By letter dated May 14, 1986, the Trustee requested an extension until June 2, 1986 for the filing of his memorandum as the dispute was near settlement. A memorandum was filed on June 3, 1986. Debtor's counsel requested an extension to file by June 17, 1986; this was granted, and then further extended to June 23, 1986. Debtor's counsel then requested an extension to July 3, 1986, due to the anticipa-

ted receipt of pertinent evidence. This deadline came and went, with Debtor's counsel thereafter seeking an extension to July 28, 1986; the Trustee acquiesced, if the memorandum was received no later than August 4, 1986. Debtor's counsel informed the Court on August 1, 1986 that the memorandum would be filed in a day or so. On August 25, 1986, Debtor's counsel indicated the document would be filed no later than August 29, 1986. The Trustee agreed to this deadline. The memorandum was not received, and by letter dated September 3, 1986, the Court informed the parties the matter was submitted as of that date, and that no further documentation would be considered. Debtor's counsel filed his memorandum on September 9, 1986, with the Trustee consenting to the Court's receipt and consideration of the document. The Trustee filed a reply memorandum on September 23, 1986.

tired while still employed by the Mackenzie firm (Debtor's memorandum at pp. 8–10; Exhibit A). Finally, Debtor relies upon New York's scheme of "equitable distribution" for the proposition that his spouse's one-half interest in the Plan is properly excludable.

## CONCLUSIONS OF LAW

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B).

Pursuant to Code § 522(b)(1), the State of New York chose to "opt out" of the Federal exemption scheme proposed under the Bankruptcy Code. 1982 N.Y. Laws § 2, Ch. 540 (McKinney 1982). New York exemptions are codified at Article 10–A, Personal Bankruptcy Exemptions, N.Y. Debt. & Cred.Law §§ 282, 283 (McKinney Supp.1986), and are the exclusive exemptions for debtors domiciled in the state. N.Y. Debt. & Cred. Law § 284 (McKinney Supp.1986).

In pertinent part, § 282 of the Debtor and Creditor Law provides:

2. Bankruptcy exemption for right to receive benefits. The debtor's right to receive: ... (e) a payment under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless (i) such plan or contract was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one a, four hundred three a, four hundred three b, four hundred eight, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred fifty-four.

The New York exemption for retirement plans is taken word for word from the Federal exemption scheme, Code § 522(d)(10)(E)(i)-(iii). Consequently, the decisions of other courts which have considered the Federal exemption or a similarly worded state exemption prove insightful for resolving the Trustee's objection.

The initial question is whether the Plan is property of the estate, for only property of the estate may be claimed as exempt. Debtor contends the limitations placed upon his ability to withdraw from the Plan at the time he filed his petition removed the Plan from consideration as property of the estate.

■ Pursuant to Code § 541(a)(1), the commencement of a case creates an estate, comprised of "all legal or equitable interests of the debtor in property." Non-bankruptcy law will initially determine the debtor's interest in property, yet the question of what constitutes property of the estate is a federal question. *Matter of Ross*, 18 B.R. 364, 367 (N.D.N.Y.1982), aff'd., *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982). The scope of Code § 541(a)(1) is very broad, with *every* interest of the debtor becoming part of the estate. H.R.Rep. No. 595, 95th Cong., 1st Sess. 368–67, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6323–4 ("House Report"); S.Rep. No. 989, 95th Cong., 2d Sess. 82–3, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5868–9 ("Senate Report"); *Matter of Ross, supra* 18 B.R. at 367.

■ The Debtor had an interest in the Plan at the time he filed his petition. This interest was 100% vested, and whatever its nature, was part of the Debtor's bankruptcy estate. Debtor's argument confuses the issue of the Plan's *exclusion* from property of the estate, with that of the Plan's *exemption* from property of the estate available for Trustee's liquidation. New York cases to date have uniformly held such plans to be part of the debtor's estate. *Matter of Ross, supra*, 18 B.R. at 367, 691 F.2d at 84; *In re Donaghy*, 11 B.R. 677 (Bankr. S.D.N.Y.1981) (pension). The argument that such plans are excluded from property of the estate pursuant to Code § 541(c)(2) was resolved by the United States Court of Appeals for the Second Circuit in *Regan v. Ross, supra*. In that case, the administrators for two New York

State administered pension funds argued that state law prohibitions against pension fund assignment to creditors, N.Y. Retire. & Soc. Sec. Law § 110 (McKinney Supp. 1986) kept pension benefits from the ambit of a Chapter 13 debtor's estate. The administrators also argued that Code § 541(c)(2) operated to bar pension funds from use in a Chapter 13 plan. In affirming the District Court, and after reviewing the legislative history surrounding the enactment of Code § 541(c)(2), the Court of Appeals restricted the applicability of the section to spendthrift trusts in particular. *See,* House Report, *supra,* at 369, 1978 U.S. Code Cong. & Ad. News at 6325; Senate Report, *supra* at 83, 1978 U.S. Code Cong. & Ad. News at 5869. As the Plan is clearly part of the Debtor's estate, the second inquiry is to what degree the Debtor's interests therein are exempt as a matter of law.

■ The Trustee contends that because the Plan was established by an "insider", under the terms of Debt. & Cred.Law § 282(2)(e)(i) (McKinney Supp. 1986), the Plan is not exempt. The New York statute does not define an "insider", yet because the language of the exemption was taken verbatim from the Code, reference to the definitional provisions of the Code is warranted.

Concerning an individual debtor, Code § 101(28)(A) defines an insider as:

(i) [a] relative of the debtor or of a general partner of debtor;

(ii) [a] partnership in which the debtor is a general partner;

(iii) [a] general partner of the debtor; or

(iv) [a] corporation of which the debtor is a director, officer, or person in control;

. . .

The Debtor was a partner with the Mackenzie firm when his rights under the Plan arose. As such, the Plan was "established by or under the auspices of an insider that employed" the Debtor. However, the Trustee misconstrues the New York exemption statute, for all three qualifying provisions thereunder must be present in order to deny the claimed exemption. The Court reads the three subsections of the New York exemption statute in the conjunctive, for the word "and" is used to express joint interpretation. *See, People v. Donner,* 106 Mis.2d 779, 781 n. 1, 435 N.Y. S.2d 225 (N.Y.Sup.Ct.1980).

Consequently, in addition to insider involvement with the Plan's establishment, the Trustee must prove that Plan payments are made on account of age or length of service, and also that the Plan fails to qualify under the stated provisions of the Internal Revenue Code. Plan payments to Debtor are admittedly payable on account of his age or length of service, but the evidence adduced indicates the Plan qualifies under the Internal Revenue Code. (Debtor's memorandum, Exhibit D). The Trustee does not therefore, prevail on his argument that the Plan is technically deficient under N.Y. Debt. & Cred. Law § 282(2)(e)(i)-(iii) (McKinney Supp. 1986).

■ The crux of the Trustee's objection to the Plan's exemption is that it is not "reasonably necessary for the support of the debtor or any dependent of the debtor." The Trustee, as objector to the claimed exemption, bears the burden of proof. Fed.R.Bankr.P. 4003(c). *In re Schlee,* 60 B.R. 524, 528 (Bankr. D.Minn.1986). *Contra, In re Montavon,* 52 B.R. 99, 102 (Bankr. D.Minn.1985). The Trustee must show by a preponderance of the evidence that the debtor has not properly claimed the exemption. *In re Brooks,* 60 B.R. 155, 159 (Bankr. N.D.Tex.1986).

The leading case interpreting the "reasonably necessary" language of the federal exemption is *Warren v. Taff (In re Taff),* 10 B.R. 101 (Bankr.D.Conn.1981). The *Taff* court thoroughly analyzed the reports and proposed uniform exemption laws considered by both the House and Senate in drafting a list of federal exemptions for the Code. This review led the *Taff* court

to conclude that the reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated . . . and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in

society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim.

*Id.* at 107.

As noted by another New York bankruptcy court, the special treatment afforded pension benefits under state and federal law stems from the view that such funds are in the nature of future earnings, immune from the claims of post-petition creditors, and are part of the debtor's "fresh start". *In re Donaghy, supra,* 11 B.R. at 679–80.

■ Some courts have restricted inquiry to consideration of a debtor's *present* needs only; this analysis is justified by reference to the present tense phrasing of the exemption statute. Thus, in *Matter of Kochell,* 26 B.R. 86 (Bankr.W.D.Wis.1982), *aff'd.,* 732 F.2d 564 (7th Cir.1984), the bankruptcy court denied a 43 year old debtor's claimed pension fund exemption where the debtor was not currently drawing on the funds, and his monthly budget indicated a surplus of $1,500.00 of income over expenses. The debtor had urged the court to broadly construe the federal exemption scheme by taking into account his needs and those of his dependents over the long run, particularly the possibility that his death or disability would jeopardize the education of his three children. The *Kochell* bankruptcy court, noting that a new pension could easily be re-established, rejected this plea:

> Although the exemption provisions of 11 U.S.C. § 522 should be broadly construed in favor of the debtor, the purpose of the exemptions is to protect the fresh start of the debtor following bankruptcy, not to insure that no future misfortune could possibly lower the standard of living to which the debtor's dependents have become accustomed.

*Id.* at 87.

Similarly, in *In re Clark,* 18 B.R. 824 (Bankr. E.D.Tenn.1982) *aff'd., Clark v. O'Neill,* 711 F.2d 21 (3d Cir.1983), focus was upon a debtor's *present* needs, for an exemption of future payments "demonstrates a concern for the debtor's long-term security which is absent from the statute".

*Clark v. O'Neill, supra,* 711 F.2d at 23. The United States Court of Appeals for the Third Circuit therefore affirmed the bankruptcy court's denial of a claimed exemption for a 43–year old debtor's Keogh retirement plan.

A reading of these cases reveals the factual inquiry was heavily influenced by the relatively young ages of the debtors, coupled with future earning potential sufficient to re-fund a pension account for retirement. *See, In re Kochell, supra,* 732 F.2d at 564–65. Under different facts, the result has been to allow an exemption for at least a portion of the pension funds.

Thus, this was the result for all of a lump sum distribution from a pension plan received prior to the bankruptcy filing where the unemployed debtor was 62 years old, stricken with emphysema, had an uncertain employment future, and whose 64 year old spouse had substantial cancer-related bills. *In re Donaghy, supra.* The *Donaghy* court noted the pension fund was debtor's only income source, aside from disability benefits. Medical bills, as well as food, clothing and shelter costs were viewed as increasingly burdensome expenses, thus warranting the claimed exemption. The *Taff* decision, *supra,* was cited for the proposition that "[t]he special needs of retired, infirm and elderly debtors should be taken into account." *In re Donaghy, supra,* 11 B.R. at 680.

Similarly, in *In re Schlee,* 60 B.R. 524 (Bankr.D.Minn.1986), the bankruptcy court held substantial Keogh account holdings exempt where the 56 year old debtor had a limited future income stream below that of anticipated "basic" monthly expenses. Likewise, the bankruptcy court in *In re Miller,* 33 B.R. 549 (Bankr.D.Minn.1983), referencing Congressional intent that pension "benefits are akin to future earnings of the debtor", concluded that debtor's future retirement needs could be considered in determining the exemption. *Id.,* at 552–53 *citing,* House Report, *supra,* at 362, 1978 U.S. Code Cong. & Ad. News at 6318.

■ The Court's task is somewhat hampered by the Trustee's failure to proceed at

an evidentiary hearing on this matter. While the Trustee has of late requested a hearing, his prior actions have clearly evidenced a waiver of the right to have the matter set for hearing. It would be prejudicial to the Debtor's interests to accede to the Trustee's request at this time, nearly one year after the objection to the claimed exemption was first filed. Consequently, the Court is, to a large extent, left to rely upon the factual representations of the Debtor and his counsel in the documents which have been previously filed. The Court does not view Debtor's circumstances in a vacuum, and additionally takes into account the realities of the world. Debtor is 60 years of age. As an attorney licensed to practice law in New York State, Debtor is not tied to any pre-ordained retirement age. While the Court does not suggest the Debtor must continue working until he is no longer physically and mentally capable, this is not a case where a debtor may be said to have a finite number of working years remaining. Indeed, one need only review the current membership of the United States Supreme Court to realize that professional vitality and viability extends far beyond age 65. Debtor has no known health problems limiting his ability to generate income, presently at a net figure of just under $3,000.00 per month. His spouse is unemployed, and presumably will remain so in the future. While the record is unclear whether the children residing in the home are the Debtor's legal "dependents", the Court presumes that the age of emancipation for each cannot be far off, if indeed it has not yet already been reached. Debtor will presumably receive social security payments upon retirement, although no evidence was presented in this regard.[3]

■ Debtor's current income is more than adequate to provide for the basic needs of his dependents and himself. His monthly expenses are high, yet many of those listed do not constitute factors to be considered as part of one's basic needs. Debtor has not reaffirmed the automobile debt, thus freeing $391.00 per month.

Debtor has presumably listed his residence for sale, and thus associated expenses will be drastically reduced upon sale, with Debtor receiving the sum of $10,000.00 as his homestead exemption. By Debtor's own reckoning, there is a considerable equity in the home. Debtor currently contributes $2,400.00 per year towards his in-laws' rent; such payments, absent substantially more compelling proof, are surely no part of his basic needs. The Court similarly views the $1,200.00 yearly expenditure on vacations and gifts, particularly when a like amount is earmarked for Debtor's entertainment.

■ By Debtor's own admissions, his income is sufficient to meet his family's basic needs at present. As his monthly expenses are reduced, the monies previously used to meet the same may ·be used to fund a future retirement plan. While the Debtor's age is not a factor weighing in his favor, he is not, as indicated, bound to a finite number of remaining working years.

The Court's task is to sustain the Debtor's basic needs, yet not at the level to which he had been accustomed, or to the level of the demands of his previous lifestyle. When all factors are considered, the Court believes 30% of the funds currently held on account are exempt and beyond the reach of the Trustee. At a minimum, the Court notes that Debtor has at least $3,600.00 per year in income (currently associated with in-laws' rent and vacations and gifts), which could be used to fund a new retirement plan. This figure does not take into account monies available from reduced housing and transportation expenses, as well as those associated with the "support" of Debtor's non-dependent children. The funds held exempt may likewise be reinvested to provide for the retirement of Debtor and his spouse. When these funds, those received as part of the claimed homestead exemption, and those to be received in the future as part of a continued income stream, are added together, suffi-

---

**3.** The Court notes that such benefits are not designed to provide primary support for retired persons.

cient funds exist to provide for the basic needs of the Debtor and his dependents.

 As a final note, Debtor's reliance upon the New York equitable distribution scheme, N.Y.Dom.Rel.Law § 236B (McKinney Supp. 1986) is misplaced. Other than in the context of a divorce, Debtor's spouse has no present legal interest in the Plan simply by virtue of marriage. *See, Henry v. Castagnaro,* 106 Misc.2d 574, 580–81, 434 N.Y.S.2d 592 (N.Y.Sup.Ct.1980).

It is thus

ORDERED:

The pension funds listed as exempt property on Debtor's B–4 Schedule are exempt to the extent of 30% of the funds currently held on account pursuant to the Court's Order of May 5, 1986. The Trustee shall collect the remaining 70% of the funds as non-exempt assets of the estate.