**In re William J. NUDO, II, Debtor.**

**Bankruptcy No. 92–00725.**

United States Bankruptcy Court,
N.D. New York.

Oct. 14, 1992.

James F. Selbach, Syracuse, N.Y., for debtor.

Carolyn J. Cooley, Utica, N.Y., for trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The instant contested matter is before the Court by way of an objection filed by the Interim Trustee ("Trustee") on April 30, 1992, to an exemption claimed by William J. Nudo, II ("Debtor") in the proceeds of Debtor's employer sponsored 401(k) savings and profit sharing plan.

A hearing on Trustee's objection was originally scheduled for May 19, 1992, at the Court's motion term held in Utica, New York. Debtor consented to Trustee's request for an adjournment, and the hearing was rescheduled for June 2, 1992, at which time the Court heard arguments from both parties. At the conclusion of the hearing the Court provided the parties an opportunity to submit memoranda of law on the issues presented. Thereafter, the matter was finally submitted for decision on August 11, 1992.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (b)(2)(B).

## FACTS

On March 5, 1992, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Debtor received a discharge from all dischargeable debts by Order of this Court entered June 18, 1992.

Debtor was formerly employed by Waste Management Company of New York ("Employer"). While employed there, Debtor participated in a company-sponsored profit sharing and savings plan aptly named Waste Management, Inc. Profit Sharing and Savings Plan (the "Plan"). The Plan was apparently intended to be a qualified plan under Internal Revenue Code ("IRC") § 401(K). Trustee submitted what purports to be a complete set of photocopied pages from the Employee Benefits Program Booklet which summarizes the major provisions of the Plan, effective as of January 1, 1990 ("Booklet").[1] However, the Booklet provides a disclaimer which states that the actual Plan document remains the final authority concerning the contents of the Plan. *See* Booklet p. 1. Neither party submitted a copy of the Plan document to the Court.

Under the terms of the Plan, contributions are derived from four main sources: 1) "Pre–Tax Savings"; 2) Company Matching Contributions ("Matching Funds"); 3) Company Profit Sharing Contributions ("Profit Sharing"); and 4) "Investment Earnings". Pre–Tax Savings are comprised of voluntary employee contributions of from 1% to 10% of an employee's eligible pay on a pre-tax basis. Matching Funds and Profit Sharing are comprised of employer contributions. Under the former, Employer will match each participating employee's Pre–Tax Savings up to $500.00 per year. Under the latter program, Employer will contribute .2% of an employee's eligible pay for each 1% increase in Employer's before-tax earnings over the previous year up to a maximum benefit of 2% of that employee's eligible pay. An employee's "account" is actually comprised of several separate accounts into which are deposited contributions made from each of the above sources. Investment Earnings represent appreciation/depreciation of the funds held in each of the separate accounts resulting from the performance of the investment fund chosen by the employee, as permitted by the Plan, for the deposit of that employee's account balances. *See* Booklet p. 11.

Other contributions may be from post-tax savings made before January 1, 1990, rollovers from the qualifying plans of previous employers and stock transfer contributions from Employer's prior employee stock ownership plan (PAYSOP). *See* Booklet p. 8–10.

Employees participating in the Plan may withdraw Post–Tax Savings contributions made before January 1, 1990, without penalty for any reason. *See* Booklet p. 15. Withdrawals from other accounts before age 59½, however, are restricted. Pre–Tax Savings may only be withdrawn for reasons which are classified by the Internal Revenue Service ("IRS") as "financial hardship". *Id.* Additionally, the employee must pay current income taxes, as well as an IRS penalty for such early withdrawals. The Employer also penalizes these withdrawals by placing certain restrictions on the employee's future participation in the Plan. However, Matching Funds are not available for withdrawal. *Id.* Upon termination before age 59½, federal income taxes and IRS penalties may be avoided by rolling the account balances over into a qualified Individual Retirement Account ("IRA"). *See id.* p. 17.

---

**1.** The Booklet does not refer to the Plan as a 401(k) plan. However, both parties have specifically referred to the Plan as such. Additionally, the Court notes that the Plan provides for voluntary contributions of deferred employee income, as well as for employer sponsored contributions to a trust which is maintained for the benefit of employees, having restrictions both on alienation, *see* IRC § 401(a)(13), and on the distribution of funds, *see* IRC § 401(k)(2)(B)(i), and thus appears to have the characteristics of such a plan. *See* IRC § 401(k).

Participation in the Plan is conditioned on, among other things, continued employment. *See* Booklet p. 5. Upon termination of employment, the entire value of an employee's vested account balances, *see* Booklet p. 13, are to be distributed to the employee or designated beneficiary. *See* Booklet p. 14. However, when the total value of the account balances exceeds $3,500.00, payments from the fund can be deferred up to age 65, even after the termination of employment. *See* p. 15.

On or about December 9, 1991, Debtor's employment was terminated. Debtor's Schedule B, which is attached to his petition, indicates that the value of the account balances was $5,000.00. In listing this sum, however, Debtor did not provide a breakdown of the individual account balances that comprise this total. Debtor's Schedule C lists the entire amount held in the account as exempt property.

On or about January 6, 1992, Debtor executed a "Request for Payment" form electing to receive a single lump sum distribution of these funds. However, on or about February 13, 1992, Debtor elected instead to defer such distribution. Presently, Debtor's account remains "on hold" with Employer. *See* Trustee memo, Exhibit A. Under the terms of the Plan, however, Debtor has the right at any time to elect a distribution of the funds held in the account. *See id.*

## ARGUMENTS

Trustee contends that the exemption claimed by Debtor under New York Debtor and Creditor Law ("NYD & CL") § 282(2)(e) (McKinney 1990) is simply not applicable under the circumstances present here, since Debtor's participation in the Plan terminated prior to the filing date of the bankruptcy petition, and Debtor is entitled to have the Plan funds distributed to him at any time. Rather, Trustee asserts that such funds should effectively be considered "cash" which became property of the estate upon the commencement of the case, and are only exemptible to the extent of the cash exemption to which Debtor may be entitled. Although not specified, Trust-

ee is presumably referring to the contingent alternative exemption provided in NYD & CL § 283(2).

Debtor takes the position that his participation in the Plan did not cease upon termination of his employment. Rather, the funds to which he became entitled under the Plan continue to be held for his benefit in his "Plan" account, and thus have not become property of the estate. Moreover, Debtor contends that any payments from the account to which he may now be entitled, are specifically exemptible under NYD & CL § 282(2)(e) as payments due under a "stock bonus, pension, profit sharing, or similar plan...." *Id.*

## DISCUSSION

■ Pursuant to Code § 541(a)(1), the commencement of a case creates an "estate" which is comprised of all equitable or legal interests of the debtor in property. Property of the debtor is broadly defined, encompassing even that which may be necessary for a fresh start. *In re Boon*, 108 B.R. 697, 700 (W.D.Mo.1989) (citation omitted). Certain property of the debtor, however, may be exempted from the estate as provided in Code § 522.

Pursuant to Code § 522(b)(1) New York has "opted out" of the federal exemption scheme, choosing instead to provide its own exclusive set of permissible exemptions in bankruptcy for debtors domiciled in the state. *See* NYD & CL §§ 282 and 284. New York Civil Practice Law and Rules ("NYCPLR") § 5205 (McKinney 1978 & Supp.1992) is listed among those exemptions permissible in New York.

NYCPLR § 5205(c)(1) provides the New York State exemption for spendthrift trusts. *See In re Mann*, 134 B.R. 710, 714 (Bankr.E.D.N.Y.1991). Although provided as an exemption, a spendthrift trust actually operates as an *exclusion* from property of the estate. *See In re Kleist*, 114 B.R. 366, 369 (Bankr.N.D.N.Y.1990) (citation omitted).

■ Code § 541(c)(2) preserves restrictions on the transfer of a beneficial interest of the debtor in a trust to the extent that

such restrictions are enforceable under applicable nonbankruptcy law. Applicable nonbankruptcy law encompasses state spendthrift trust laws, *see Regan v. Ross,* 691 F.2d 81, 85 (2d Cir.1982) (citation to legislative history omitted); *accord Matter of LeFeber,* 906 F.2d 330, 331 (7th Cir. 1990), as well as any relevant nonbankruptcy law, including federal law such as the Employee Retirement Income Security Act of 1974 ("ERISA"). *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992).

While state law determines the extent of the debtor's interest in property, it is federal law that ultimately determines whether that property is a part of the estate. *In re Woodford,* 73 B.R. 675, 678 (Bankr.N.D.N.Y.1987) (citation omitted). In enacting Code § 541(c)(2), Congress was undoubtedly mindful of the traditional requirements for the validity of spendthrift trusts under state law. *See e.g., In re Balay,* 113 B.R. 429, 442 (Bankr.N.D.Ill. 1990) ((1) the trust must contain an anti-alienation provision; (2) the trust must not be self-settled; and (3) the property of the trust must be out of the control of the beneficiary) (citations omitted). Rather than circumscribing any variations therefrom, Congress declared through Code § 541(c)(2) that deference should be accorded to the respective state created boundaries defining spendthrift trusts. *In re Kleist, supra,* 114 B.R. at 370; *cf. In re Balay, supra,* 113 B.R. at 440–43 (dictum) (construing Illinois statute creating conclusive presumption of spendthrift trust status for ERISA qualified retirement plans to be reconcilable with the Code). As long as state spendthrift trust law requires that enforceable restraints be placed on alienation of the debtor's beneficial interest in the trust res, Code § 541(c)(2) operates to exclude such interest from property of the estate. *See, Patterson v. Shumate, supra,* —— U.S. at ——–——, 112 S.Ct. at 2247– 48. NYCPLR § 5205(c) satisfies this requirement.

NYCPLR § 5205(c) incorporates by reference the anti-alienation requirement contained in IRC § 401(a)(13), which states as

a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that the benefits provided under the plan may not be assigned or alienated." The Plan, which includes such a provision, *see* Booklet p. 22, also satisfies a similar anti-alienation requirement under ERISA. *See* 29 U.S.C. § 1056(d). Additionally, the anti-alienation provision contained in the Plan is enforceable under ERISA, as Plan trustees are required to discharge their duties in accordance with the documents and instruments governing the Plan. *See Patterson v. Shumate, supra,* —— U.S. at ——, 112 S.Ct. at 2247 (citing 29 U.S.C. § 1104(a)(1)(D)).

NYCPLR § 5205(c) was amended in 1989, apparently to prevent federal bankruptcy courts, when applying state law in such matters, from directing money from the debtor's Keogh or other retirement fund into the hands of non-family creditors. *See In re Mann, supra,* 134 B.R. at 714 (citing NYCPLR § 5205 (Supp.1992) (Supplementary Practice Commentaries, Income Exemptions, by D. Siegel, 1989)). NYCPLR § 5205(c)(2) through (3), as amended, provides in pertinent part that:

> "[A]ll trusts, custodial accounts, annuities ... monies assets. or other interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans ... shall be *conclusively presumed to be spendthrift trusts* under this section and the common law of the state of New York for all purposes, including ... all cases arising under ... the United States Bankruptcy Code...."

*Id.*

In the instant proceeding Trustee does not object to the claimed exemption on the basis that the Plan itself is not a qualifying plan under NYD & CL 282(2)(e) or NYCPLR § 5205(c). Rather, it is Trustee's contention that upon termination of Debtor's employment, Debtor's participation in

72

the Plan also ceased, thereby removing the funds held in Debtor's account from the protective reach of either statute. Moreover, that upon commencement of the case, these funds became property of the estate.

■ Trustee is correct in asserting that Debtor's participation in the Plan came to end upon termination of his employment, *see* Booklet p. 5. Contrary to the position taken by Trustee, however, termination of the employment relationship is not the triggering event which separates the funds held in Debtor's account from the spendthrift trust presumption contained in NYCPLR § 5205(c). Rather, it is evident from the plain language of that statute that rollovers from qualifying "Keogh (HR–10), retirement or other plans established by a corporation....", which naturally occur after employment has terminated, are to continue to have the benefits of the spendthrift trust presumption. *See* NYCPLR § 5205(c)(2); *In re Mann, supra,* 134 B.R. at 714–15.

In *In re Mann,* Bankruptcy Judge Eisenberg held that "roll over" funds formerly held in an ERISA qualified Keogh plan which were subsequently deposited into an IRA retained the spendthrift trust exemption under NYCPLR § 5205(2) and (3). Judge Eisenberg reconciled the holding in *Mann* with that Court's prior decision holding IRA's not exempt property under New York law, *see In re Iacono,* 120 B.R. 691 (Bankr.E.D.N.Y.1990), on the basis that the IRA involved in *Iacono* was not created from a rollover from an ERISA qualified plan as specifically provided for in NYD & CL § 282(2)(e) and NYCPLR § 5205(c). *In re Mann, supra,* 134 B.R. at 715.

Thus, at the commencement of the case herein, Debtor held the right to receive payment of the funds held in his account, which he could then roll over, for example, into a qualified retirement plan of a subsequent employer, *see* Booklet p. 10, or an IRA, *see* Booklet p. 17. In both instances Debtor would presumably avoid the adverse tax consequences and penalties associated with early withdrawal of qualified retirement funds, and would also preserve the protection of the spendthrift trust pre-

sumption under NYCPLR § 5205(c). The IRC provision applicable to rollovers from the Plan provides that the time limit for affecting a rollover is sixty days from *receipt* by the employee of a payment of funds formerly held in the Plan. *See* IRC § 402(a)(5)(C).

As of the commencement of the case, Debtor's account balance was approximately $5,000.00, the payment of which Debtor elected to defer in accordance with the terms of the Plan. Since Debtor was entitled to roll these funds over into another qualified retirement account, thus preserving the spendthrift trust presumption, *see* NYCPLR § 5205(c)(2) and (3), the Court concludes that pending such rollover, Debtor's claimed interest in the funds did not become estate property for purposes of Code § 541(a)(1).

Based on the foregoing conclusions, it is

ORDERED that Trustee's objection is denied.