In Re Richard Allen EVERHART,
Debtor.

Philip R. JOELSON, Trustee, Plaintiff,

v.

TIFFIN SAVINGS BANK, Defendant.

Bankruptcy No. 80–0339.
Related Case: 80–01101.

United States Bankruptcy Court,
N. D. Ohio, W. D.

May 5, 1981.

Philip R. Joelson, Toledo, Ohio, for plaintiff.

James D. Supance, Tomb & Hering, Tiffin, Ohio, for defendants.

Timothy R. Reynolds, Toledo, Ohio, for debtor.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court upon a Complaint for Recovery with evidence and testimony presented, and memoranda in lieu of argument.

### FACTS

The Court finds the following facts:

1.) On March 14, 1980, the Debtor executed a promissory note to Tiffin Savings Bank for a loan in the sum of Two Thousand Two Hundred Fifty and no/100 Dollars ($2,250.00).

2.) The security taken on the note was a loan guarantee from the Debtor's Employer, National Machinery Company (National).

3.) The funds supporting the guarantee were the monies accumulated in the Debtor's profit-sharing retirement plan at National.

4.) On June 17, 1980, the Debtor endorsed a check made out to him in the amount of Two Thousand Eight Hundred Sixty-Eight and 88/100 Dollars ($2,868.88). The Debtor's endorsement appeared below the following language: "Pay to Tiffin Savings Bank. This check shall be applied only to my National Machinery Co. Guaranteed Loan."

5.) This payment to Tiffin Savings Bank was made within ninety days preceding the Debtor's filing of Bankruptcy on July 10, 1980.

### STATEMENT OF THE ISSUES

The issues to be resolved are the following:

1.) Does Tiffin Savings Bank have standing to assert the Debtor's defense of the exempt status of the funds transferred;

2.) Does the joint pension-profit-sharing plan of National constitute a pension plan for the purpose of exempting the Debtor's share under Ohio Revised Code Section 2329.66(A)(10)(b); and

3.) If the Plan is exempt, does a transfer of the exempt funds within the preference period constitute a voidable preference recoverable by the Trustee?

### STATEMENT OF LAW

#### I. STANDING

The first objection propounded by the Trustee is that the Bank has no standing to raise the defense of the Debtor's exemption.

He cites Section 522(b) of the Bankruptcy Code which in pertinent part states the following: "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate * * * * "

 It is clear the Bankruptcy Code contemplates that only the debtor, and in certain restricted situations, his dependents, may claim exemptions from property in the estate. *Colliers On Bankruptcy* states this point of view in the following manner: "It would appear under section 522(b) that an individual debtor must claim the exemption in order to have it be effective. Otherwise, the exempt property will remain property of the estate." *Colliers On Bankruptcy*, Vol. 4, § 541.02, at 541–15, 16, 15th Ed. (1980). There has been no allowance for anyone else to claim the exemptions under Section 522 of the Bankruptcy Code. This Court concurs with that proposition and dismisses Tiffin Savings Bank's defense. However, the merits of the claims advanced will be discussed in order to resolve the pending dispute.

## II. PENSION PLAN OR PROFIT–SHARING PLAN

 Upon a review of National's Profit-Sharing Retirement Plan (the Plan) in conjunction with Title 26 U.S.C. 401 dealing with qualified pension, profit-sharing and stock bonus plans, and Ohio Revised Code § 2329.66(A)(10)(b), the Court has concluded that the Plan is a pension plan.

The Plan itself states in Section 1 the following:

"The purposes of the plan are to enable the employees * * *

(a) to share in the profits of the company;

(b) to acquire and enjoy, so long as they are employed by the company, an indirect interest in the company, through the investment of the funds accumulated under the plan in common stock of the company; and

(c) through such sharing in the company's profits and investment of the trust fund, *to accumulate funds for their use at and after retirement,* * * * * " (Emphasis Supplied)

This introductory section of the Plan indicates that the underlying purpose of the Plan is solely to "accumulate funds for * * [the employees'] use at and after retirement." This objective is to be accomplished through a profit-sharing scheme.

In order to determine whether the monies within this particular plan have an exempt status under Ohio law, one must become acquainted with Ohio Revised Code Section 2329.66(A)(10)(b) which states the following:

"(b) The person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit sharing plan or a payment included in division (A)(6)(b) or (A)(10)(a) of this section, on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of his dependents, except if all the following apply:

(i) The plan or contract was established by or under the auspices of an insider that employed the person at the time his rights under the plan or contract arose;

(ii) The payment is on account of age or length of service;

(iii) The plan or contract is not qualified under the Internal Revenue Code of 1954, 68A Stat. 3, 26 U.S.C. 1 as amended."

 A primary consideration is the rule of interpretation of the exemption statute. Ohio courts have ruled that there should be a general rule of liberality. In effect, when there is a doubt as to the intent of the statute, the interpretation should be construed in favor of the debtor. *Dennis v. Smith*, 125 O.S. 120, 180 N.E. 638 (1932); *In re Piero*, 46 Ohio Ops.2d 40 (1968); *Butz v. Jordan*, 3 B.C.D. 888 (S.D.Ohio 1977).

Upon a close scrutiny of this subsection, it must be emphasized that nowhere is there specifically excepted payments from a profit-sharing "retirement" plan.

There are differences between profit-sharing plans and profit-sharing retirement

plans, the main difference being the time of dispersal of the funds. In a profit-sharing plan funds are more readily available to the investor. In the profit-sharing retirement plan discussed here, funds are distributed at or after retirement unless early distribution is allowed. Only after a showing of financial necessity by meeting certain strict guidelines, may the trustees approve early distribution.

According to Ohio Revised Code Section 2329.66(A)(10)(b), exempt status also attaches to a "similar plan or contract." In order to determine whether this plan is included as a "similar plan or contract", we must look to the Internal Revenue Service's treatment of pension and profit-sharing plans since it appears Ohio has no case law or documented legislative history on this subject.

The qualifications for pension, profit-sharing and stock bonus plans are set forth in 26 U.S.C. 401, and are also explained in *The 1981 U. S. Master Tax Guide*, published by Commerce Clearing House. The tax guide indicates at page 200 that:

"There are three general types of tax-qualified retirement plans.

■ *Pension plan.*—The employer usually is required to provide actuarially computed contributions based on definitely determinable benefits ('defined benefits') that will be paid to employees. * *

■ *Profit-sharing plan.*—Employer contributions are based on profits. Benefits provided for employees, therefore, are not definitely determinable. The plan, therefore, provides for 'defined contributions' rather than 'defined benefits'. A qualified profit-sharing or stock bonus plan may, under specified conditions, give the employee the option of taking employer contributions in cash or having them paid to the trust. (Code Sec. 401(k).)

■ *Stock bonus plan * * * * "*

This demonstrates that the IRS contemplates a retirement plan in a profit-sharing form.

One indication of the qualification for any particular plan of a company seeking an exempt tax status is the acquisition of a letter of determination from the IRS. National Machinery received such a letter dated May 30, 1978.

The Trustee also stated that the plan was not qualified because the circumstances show that the Debtor signed over his check of retirement funds to the Bank, thus evidencing an involuntary or voluntary alienation or assignment of the funds in contravention to 26 U.S.C. 401. However, subsection (13) of Section 401(a) states that "a loan made to a participant or beneficiary shall not be treated as an assignment or alienation of such loan if such loan is secured by the participant's accrued nonforfeitable benefit * * * * "

In light of the tax guide explanation and the Ohio Code's inclusion of a "similar plan or contract", this Court concludes that as to the first part of 2329.66(A)(10)(b), the National Plan is a distinguishable profit-sharing *retirement* plan. The Plan will now be reviewed with the exclusionary clause in the latter part of that Section.

■ A payment under a pension or similar plan may be exempted only to the extent necessary for the support of the debtor and his dependents. If, however, the following applies:

1.) the payment was on account of age or length of service, and

2.) the plan was established by an insider that employed the debtor at the time his rights under the plan arose,

then the rights to such payments will not be exempt if the plan or contract does not qualify under Section 401(a), 401(b), 408, or 409 of United States Code Title 26. *Colliers On Bankruptcy*, Vol. 3, § 522.20, at 522–58, 15th Ed. (1980).

■ The Plan, under "Section 5 Eligibility", states that an employee may not become a participant of the Plan unless he has been employed by the company continuously for one year. The Plan further states in Subsection 8–6 on Page 11 of the Plan, that "[e]ach company contribution will be credit-

ed to the accounts of participants on the accounting date as of which the contribution is made * * * who rendered personal services to the company for the year for which the contribution is made * * *." Section 8.8 further states "[f]or the purposes of subsection 8–6: (a) One unit will be allocated to each participant for each completed year of continuous service with the company, or fraction thereof in excess of six months * * *." These statements evidence the fact that participants' rights to retirement benefit payments accrue with the length of service.

Since the Plan was established by National Machinery Company, who employed the Debtor at the time his rights under the Plan arose, the second condition has been met.

Finally, the Plan is a qualified plan under 26 U.S.C. 401 as evidenced by the May 30, 1978 determination letter from IRS. (Section 408 deals with individual retirement accounts and Section 409 with retirement bonds, neither of which are relevant in this instance and will not be discussed here.)

In resolving this issue, the Court concludes that the Debtor's right to receive a payment under a profit-sharing retirement plan is exempt under Ohio Revised Code Section 2329.66(A)(10)(b).

## III. PREFERENTIAL TRANSFER OF EXEMPT PROPERTY

Upon concluding that the monies within the Plan are exempt, it must be determined if a transfer of exempt funds within the preference period constitutes a voidable preference.

According to Section 541 of the Bankruptcy Code, the commencement of a case under Sections 301, 302, or 303 creates an estate. This estate includes all legal or equitable interests of the debtor in property at the commencement of the case.

■ Under the former Bankruptcy Act, title to exempt property of the bankrupt did not vest in the trustee, but remained in the bankrupt. See Section 70(a) Bankruptcy Act; *Holden v. Stratton*, 198 U.S. 202, 25

S.Ct. 656, 49 L.Ed. 1018 (1902). Under the present Bankruptcy Code, Section 541(a)(1) has the effect of overruling *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), in that Section 541 expressly includes in the estate all the property of the debtor, even that needed for a fresh start. Only after the property comes into the estate, may the debtor exempt his share under Section 522.

The Bankruptcy Act cases contend that when a transfer involved property with a value in excess of the amount of the debtor's exemption allowance, the transfer could then constitute a voidable preference to the extent that the value of the property exceeded the value of the exemption allowed. *Rutledge v. Johansen*, 270 F.2d 881 (10 Cir. 1959); *In re Hausman*, 209 F.Supp. 219 (M.D.Ga.1962); *Colliers On Bankruptcy*, Vol. 4, § 541.01–541.09, at 541–5 to 541–55, 15th Ed. (1980). This question, however, has not been raised in these proceedings.

With the commencement of the Bankruptcy Code, the Act cases dealing with exempt property outside of the estate ceased to be relevant in that unlike the Act, the Code has not excluded exempt property from the estate. Since *all* the Debtor's property is now under the protection of the Trustee, he has a greater capacity to regulate what comes in and goes out of the estate.

■ Therefore, even though the monies within the Debtor's retirement fund are exempt, they must first go into the estate and from there only may they be exempted out.

It is therefore ORDERED, ADJUDGED AND DECREED that the Trustee is to recover the money transferred to Tiffin Savings Bank in the amount of Two Thousand Eight Hundred Sixty-Eight and 88/100 Dollars ($2,868.88). A hearing will be scheduled to determine what amount of the exempt funds, if any, is reasonably necessary for the support of the Debtor and any of his dependents, this being the amount of the exemption, as required by Section 2329.66(A)(10)(b).