**In re Warren H. LEIMBACH, Debtor.**

**Bankruptcy No. 2-87-04518.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 13, 1989.

Frederick M. Luper, Columbus, Ohio, trustee.

William B. Logan, Jr., Roger T. Whitaker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for trustee.

Robert J. Sidman, Bruce L. Ingram, Charles P. Hurley, Vorys, Sater, Seymour and Pease, Columbus, Ohio, for Pan-Western Life Ins. Co.

Alphonse P. Cincione, John Dowling, Richard V. Patchen, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtor.

Stephen K. Yoder, Bricker & Eckler, Columbus, Ohio, for Retter, Leimbach, Hess & Smith, Inc.

OPINION AND ORDER RELATING TO DEBTOR'S INTEREST AND RIGHT TO CLAIM OF EXEMPTION IN PROFIT SHARING PLAN TRUST AND INDIVIDUAL RETIREMENT ACCOUNT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court, after hearing and submission of post-hearing

briefs, for determination of the respective rights of the bankruptcy estate and the debtor in a profit sharing plan trust and an individual retirement account.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (0) in which this bankruptcy judge may issue a final order.

The debtor filed a petition under the provisions of Chapter 7 of the Bankruptcy Code on September 13, 1987. Included in his schedule of assets was an individual retirement account at BancOhio National Bank (the "IRA"). The schedules also listed "for informational purposes only" an interest in a Profit Sharing Plan Trust Agreement (the "Plan") established and maintained by Retter, Leimbach, Hess & Smith, Inc., a professional medical corporation (the "Corporation") which employs the debtor as a neurosurgeon. The debtor also asserted claims of exemption for both interests pursuant to Ohio Revised Code § 2329.66(A)(10)(b) or (c).

Frederick M. Luper, the duly-appointed trustee in bankruptcy (the "Trustee") timely objected to the debtor's claims of exemption for his interests in the Plan and the IRA. The debtor opposed the Trustee's objection and further requested the Court to issue an order determining that the debtor's interest in the Plan was not an asset of the bankruptcy estate. That request was opposed not only by the Trustee, but also by Pan–Western Life Insurance Company ("Pan–Western"), a creditor of the debtor.

## FINDINGS OF FACT

Some version of the Plan has apparently been in effect since 1962 for employees of the Corporation (hereafter referred to as "Participants"). The current revised version has an effective date of November 1, 1984. The Plan is a benefit available to all employees who have completed 3 years of service and are at least 21 years old. At the present time, there are 11 Participants. The Plan's stated purpose is to recognize employees' contributions to the success of the business by establishing a system of benefits.

Contributions to the Plan are made in an amount determined annually by the directors of the Corporation. Most contributions come from the Corporation's current or accumulated profits, but Participants also may make limited voluntary contributions. Participants have access to their own contributions and may borrow from the contributions of the Corporation up to certain limits once their interests have vested. Participants also may direct the investment of their interests. A Participant may elect to terminate employment and retire beginning with the anniversary date preceding his or her 65th birthday. Alternatively, a Participant may postpone that retirement date, thereby postponing his entitlement to immediate distribution of all amounts credited to his or her account. The committee which administers the Plan may also choose to cause distribution of a Participant's interest to the Participant upon termination of employment.

The four principals of the Corporation are its only shareholders and the trustees of the Plan. The debtor, who is past the normal retirement age of 65 years, owns 34 shares or 25% of the issued and outstanding stock of the Corporation. He also is a director, holds the office of vice-president and is a member of the committee appointed by the board of directors to administer the Plan. As of October 31, 1987, the value of the debtor's interest in the Plan, all of which is fully vested, was $481,855.81. Apparently the debtor has not made voluntary contributions to the Plan nor has he borrowed from his account.

In September 1986 the Corporation received a determination from the Internal Revenue Service that, as of that date, the Plan was qualified under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). That determination related only to the status of the Plan under the Internal Revenue Code and, by the specific language of the communication, was "not a determination regarding the effect of other federal or local statutes." As part of that qualification pro-

**798**

cess, however, the Plan is required to include an anti-alienation provision. It is not known whether the Plan continues to be qualified. If qualified, the Plan appears to be best described as a defined contribution plan.

The IRA contained approximately $10,-191.22 on December 31, 1985. It was established by a trust agreement with Banc-Ohio National Bank. Although the agreement was not introduced into evidence, the parties' arguments assume the existence of a similar anti-alienation clause in that agreement.

### ISSUES OF LAW

The issues presently before the Court are:

1. Whether, as a matter of law, pursuant to 11 U.S.C. § 541(c)(2), the ERISA-required anti-alienation provisions in the trust agreements prevent the debtor's interests in the Plan and the IRA from becoming property of his bankruptcy estate.

2. If the anti-alienation provisions do not exclude the debtor's interests from becoming property of the bankruptcy estate as a matter of law, whether such interests are excluded as spendthrift trusts which are valid under applicable state law.

3. If the debtor's interests are property of his bankruptcy estate, not excluded as spendthrift trusts, whether the debtor is able to assert claims of exemptions under state or federal law for such interests.

The parties agreed that the issues presented at this time would not include the extent of any exemption to which the debtor might be entitled. That issue is reserved for a later time should such determination become necessary.

On issues 1 and 2, the debtor has the burden of proof. The burden is on the trustee on issue 3 pursuant to Bankruptcy Rule 4003(c).

### CONCLUSIONS OF LAW

A. ERISA Anti–Alienation Provisions and § 541(c)(2)

█ The anti-alienation provision contained in the Plan at ¶ 12.2 and presumed to be contained in the IRA in a similar form provides, in part:

Subject to the exceptions provided below, no benefit which shall be payable out of the Trust Fund to any person (including a participant or his beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

This provision shall not apply to the extent a participant or beneficiary is indebted to the Plan, for any reason, under any provision of this Agreement.

This provision shall not apply to a "qualified domestic relations order" defined in Code Section 414(p) and those other domestic relations orders permitted to be so treated by the Administrator under the provisions of the Retirement Equity Act of 1984.

The debtor contends that the anti-alienation provision quoted above causes his interest in the Plan and the IRA to be excluded from property of his bankruptcy estate. In support of his contention, the debtor relies upon 11 U.S.C. § 541(c)(2) which excludes "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ..." The debtor argues that the anti-alienation, anti-attachment clauses required to qualify the Plan and the IRA under federal tax laws constitute restrictions on the debtor's beneficial interests which are enforceable under applicable nonbankruptcy law such as ERISA and thereby cause the debtor's interest in the Plan and the IRA not to be included as property of his bankruptcy estate.

The opposing argument, advanced by the Trustee and Pan–Western, is that the "applicable nonbankruptcy law" referenced by § 541(c)(2) is only spendthrift trust law of the state whose law governs the interpretation of the debtor's rights and does not include ERISA provisions unless such provisions are also valid spendthrift provisions under state trust law.

Although case law is divided on this issue, the majority of courts considering the scope of "applicable nonbankruptcy law" and all six of the federal circuit courts of appeal which have ruled on this issue, have determined that "applicable nonbankruptcy law" should be narrowly construed. Such construction limits the exclusion issue to a determination whether the trust document is valid as a spendthrift trust under the state's law which must be applied when a participant seeks to enforce his rights under the trust. *See Daniel v. Security Pacific National Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313; *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983). *See also McLean v. Central States, Southeast and Southwest Areas Pension Fund (In re McLean)*, 762 F.2d 1204 (4th Cir.1985); *Regan v. Ross*, 691 F.2d 81 (2nd Cir.1982). The Court of Appeals for the 6th Circuit has not yet ruled on this issue under the Bankruptcy Reform Act of 1978.

Prior decisions in this area have rested upon an analysis of applicable countervailing policies and a review of the legislative history of 11 U.S.C. § 541(c). *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 82, 83, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5868, 5869; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 176 and 369 (1977), *reprinted in* U.S.Code Cong. & Ad. News 5963, 6136 and 6325. The decision process has further examined certain language required by ERISA which provides for supersession of state laws relating to employee benefit plans. However, such language expressly does not supersede or impair other federal law unless specifically provided. See 29 U.S.C. § 1144(a) and (d). The appellate decisions are further reinforced by provision in the Bankruptcy Code for specific exemptions for interests in ERISA trusts for debtors in states, unlike Ohio, which have elected to use the federal exemptions provided by 11 U.S.C. § 522(d).

In addition to the overwhelming rejection of the debtor's position by appellate courts, the Court finds that there has been a ruling on this issue by a district judge in this district. *In re Gribben*, 84 B.R. 494 (S.D. Ohio 1988). On March 25, 1988, Judge Graham wrote: "this Court cannot conclude that the anti-alienation provision of ERISA was intended to supersede the sweeping definition of the bankruptcy estate contained in 11 U.S.C. § 541(A)(1)." *Gribben*, 84 B.R. at 496. Judge Graham determined that a debtor's interest in a profit-sharing retirement plan was included in his bankruptcy estate and that the ERISA anti-alienation provisions did not preempt other federal law. *Id.* Therefore, the trust at issue must qualify as a valid spendthrift trust under state law to come within the exception contained in § 541(c)(2) of the Bankruptcy Code. Until other equally binding or higher authority determines otherwise, this Court is bound by the holding of *Gribben*. This Court further believes that holding is correct.

Accordingly, the anti-alienation provisions which are required by ERISA to be in the Plan and the IRA for qualification purposes are insufficient, as a matter of law, to cause the debtor's interest in the Plan to be excluded from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

**B. The State Spendthrift Trust Issue**

Even if the debtor's interests in the Plan and the IRA are not excluded from his bankruptcy estate solely by the existence of the ERISA anti-alienation provisions, his interests may be excluded under § 541(c)(2) if the Plan and the IRA qualify as valid spendthrift trusts under applicable state law. *See In re Shuman*, 68 B.R. 290 (Bankr.D.Nev.1986), *aff'd*, 78 B.R. 254 (Bankr.9th Cir.1987); *In re Jones*, 43 B.R. 1002 (N.D.Ind.1984); *In re Osburn*, 56 B.R.

867 (Bankr.S.D.Ohio 1986). Paragraph 12.3 of the Plan provides for construction of the Plan's terms under Ohio law. Likewise, the Court assumes the provisions of the IRA may be construed under Ohio law as an agreement between a banking institution located in Ohio and an Ohio resident. Therefore, the issue becomes whether, or under what circumstances, the Plan or the IRA is a valid and enforceable spendthrift trust under Ohio law.

In determining the validity of the Plan as a spendthrift trust, the parties focus on the debtor's "control" over the Plan's assets. Both the Trustee and Pan–Western view as evidence of control the debtor's position as one of only four shareholders and directors of the Corporation, one of only four trustees of the Plan and a rotating member of the committee which administers the Plan. Those same facts are seen by the debtor as evidence of lack of or limited control over the disposition of the funds in the Plan. This issue is important because the more control the beneficiary of the trust has, the more likely it is that the settlor and the beneficiary will be seen as the same entity. If the settlor and the beneficiary are viewed as substantively the same entity, the trust is self-settled and will not be a valid spendthrift trust under the law of most jurisdictions, including Ohio. *In re Hotchkiss*, 75 B.R. 115 (Bankr.N.D.Ohio 1987); *Brooks v. Interfirst Bank (In re Brooks)*, 844 F.2d 258 (5th Cir.1988); Restatement (Second) of Trusts § 156.

■ It is clear that the debtor is both the settlor and the beneficiary of the IRA. The Court also believes the debtor's position in the corporation gives him a degree of control over the creation and disposition of his interests in the Plan which is sufficient to destroy its spendthrift nature. *See Hotchkiss*, 75 B.R. at 117; *Brooks*, 844 F.2d at 258.

■ Even if this Court were to find the debtor's one quarter control insufficient to make the Plan a trust in which the identity of the settlor and the beneficiary were merged, other factors impact upon the enforceability of spendthrift provisions in Ohio. These factors were discussed recently by this Court in *Scott v. Bank One Trust Co. (In re McCombe)*, 93 B.R. 597 (Bankr.S.D.Ohio 1988). In *McCombe*, this Court concluded that a settlor may exclude a trust beneficiary's creditors from the scope of its largess. However, that power must be balanced against fairness to the beneficiary's creditors and the absence of fraud upon their legitimate interests. Such fairness may be accomplished by limiting the beneficiary's right to receive the property. *McCombe*, 93 B.R. at 600. The Court further noted that if the beneficiary is able to receive the property, other than through a strict support provision controlled by an independent third party, but the beneficiary's creditors may not execute against it, the pendulum has swung too far in favor of the settlor. The settlor/donor may limit the gift, but such limitation must also include the beneficiary. If the settlor does not want the property reached by levy instituted by the creditors of the beneficiary, not only must such creditors be prevented from executing against the assets, but the beneficiary also must be stripped of power to direct or require the trustee of the trust to distribute to him assets of the trust. *Id.*

As in *McCombe*, these observations do not end the analysis. The debtor contends that he has no presently enforceable rights in the Plan because he has not yet retired or become disabled so as to be entitled to benefits. However, he is authorized by ¶ 8.1 of the Plan to borrow up to $50,000 of his interest. And more importantly, the debtor retains a future interest in the Plan. That interest is his right to receive his vested interest upon voluntary retirement or to participate in direction of distribution of his interest should he voluntarily terminate his employment, even for a short period.

The effect of a similar interest was discussed in *Martin v. Martin*, 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978). Upon the termination of the *Martin* trust by the passage of years, its trustee was required to distribute all principal and undistributed income to the trust beneficiaries. In that situation the Supreme Court of Ohio specif-

ically held that the right of a beneficiary to receive that principal and income was an equitable future interest which was alienable and could be subjected to execution by a judgment creditor at that time. *Martin*, 54 Ohio St.2d at 112, 374 N.E.2d at 1391.

In the present case, once the debtor has satisfied the requirements imposed by the Plan, he likewise has an absolute right to receive his vested interest in the Plan's assets. As under *Martin,* that absolute right to require distribution of the trust assets is an alienable, equitable future interest. This Court believes the retention of such an interest in the debtor causes the spendthrift provisions of the Plan to be invalid and unenforceable under Ohio law.

In essence, the Corporation, as settlor, has attempted not only to prevent its property from going to creditors of a beneficiary, but also has attempted to permit the beneficiary to compel distribution of his share of the Plan's assets free of the claims of his creditors in a manner beyond that permitted by the exemption statutes enacted by the Ohio legislature. This Court finds that such overreaching causes the spendthrift provision to fail. The anti-alienation provision, therefore, is not a restriction which is enforceable under Ohio law within the meaning of 11 U.S.C. § 541(c)(2). The degree of control the debtor has over the timing of his right to receive his interest in the Plan makes this an even stronger case than *McCombe.* The failure of the spendthrift provision in the Plan means that the debtor's interest in the assets of the Plan is property of his bankruptcy estate, not excluded by the provisions of 11 U.S.C. § 541(c)(2).

### C. Exemption Under Ohio Law

Finally, the debtor argues that even if his interests in the Plan and the IRA come into the bankruptcy estate, under Ohio Revised Code § 2329.66(A)(10)(b) or (c), he is entitled to exempt those interests from the claims of his creditors, represented by the Trustee, to an extent reasonably necessary for the support of himself and his dependents.

Initially, the Court finds that the debtor is entitled to a claim of exemption for his interest in the IRA on deposit with Banc-Ohio. Ohio Revised Code § 2329.66(A)(10)(c) clearly provides for such entitlement and no showing was made that those funds were deposited to evade debts. The specific amount of that exemption will be determined at a later date if the parties are unable to agree on that issue.

■ More significantly, however, is the debtor's claim of exemption for his interest in the Plan. As the debtor's interest in the Plan is not a right in an individual retirement account annuity, or a Keogh or "H.R. 10" plan, as required under § 2329.66(A)(10)(c), any claim of exemption must arise under Ohio Revised Code § 2329.66(A)(10)(b). That statute states:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order as follows:

(10) ...

(b) ... the person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit sharing plan or a payment included in division (A)(6)(b) or 10(a) of this section, on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the person and any of his dependents, except if all of the following apply:

(i) The plan or contract was established by or under the auspices of an insider that employed the person at the time his rights under the plan or contract arose;

(ii) The payment is on account of age or length of service;

(iii) The plan or contract is not qualified under the "Internal Revenue Code of 1986", 100 Stat. 2085, 26 U.S.C. 1, as amended.

Ohio Rev.Code Ann. § 2329.66(A)(10)(b) (Anderson 1987).

The exceptions in § 2329.66(A)(10)(b)(i-iii) do not apply if the Plan remains qualified under the Internal Revenue Code of 1986.

Pan–Western specifically challenged any presumption of present qualification based upon the qualification shown to exist on September 13, 1986 and the record does not include evidence of qualification after that date. The bankruptcy filing was less than one year later, however, although it was in a different tax year.

Assuming that such qualification continues in force, the phrase "not including a payment from a ... profit sharing plan" appears, on its face, to defeat the debtor's claim of exemption for his interest in the Plan pursuant to Ohio Revised Code § 2329.66(A)(10)(b). The debtor, however, asserts that the exclusion was not meant to deny an exemption for profit sharing plans which were intended as pension programs. The Trustee and Pan–Western, on the other hand, contend that the statutory language is unambiguous and precise in its exception of profit sharing plans from the scope of the exemption and that resort to sources other than the language of the statute is inappropriate.

The debtor bases his argument primarily upon the rationale set forth in *In re Everhart*, 11 B.R. 770 (Bankr.N.D.Ohio 1981). The *Everhart* Court indicated that an interest in a profit sharing retirement plan is not the same as an interest in payments from a profit sharing plan which is not intended for retirement. Judge Speer, in construing the exemption statute liberally, held that the exclusion of payments from a profit sharing plan from the exemption provided in Ohio Revised Code § 2329.66(A)(10)(b) was only for plans which were not intended as retirement plans. *Everhart*, 11 B.R. at 773–74. Because there appears not to be any legislative history for the Ohio provision and because it is consistent with the philosophy of exemptions generally to exclude from creditors' claims payments in the nature of future earnings, this holding is understandable.

A significant distinction between the profit sharing plan in *Everhart* and the debtor's interest in the profit sharing trust established by the Corporation is that in *Everhart*, the profit sharing plan was ex-

pressly intended, by its own terms, to provide funds for use after retirement. No such purpose appears in the Plan in which this debtor has an interest. Rather, the stated purpose for the Plan is to recognize employees' contributions to the success of the business by establishing a system of benefits. Indeed events other than retirement, such as disability, or voluntary termination of employment if the Plan committee so directs, may give the debtor a right to distribution of his vested interest. Without indication that the Plan is specifically a retirement plan, the Court believes it would be especially inappropriate to consider whether some interpretation of the purpose behind the exemption statute might cause the statutory language of Ohio Rev.Code § 2329.66(A)(10)(b) to mean other than what it specifically states. Any such clarification necessarily should come from the legislature.

In conclusion, the Court finds that the nature of the Plan as a profit sharing trust and the explicit language of Ohio Revised Code § 2329.66(A)(10)(b) excluding such trusts from the operation of the section cause the debtor's claim of exemption for his interest in the Plan to fail.

Consistent with the foregoing, the Court finds that the debtor has failed to meet his burden of proof and the debtor's motion for an order finding that his interest in the Plan is not an asset of the estate is DENIED. The Trustee's objection to the debtor's claim of exemption is sustained as that objection relates to the Plan and is overruled with regard to the debtor's interest in the IRA.

IT IS SO ORDERED.