**In re William C. KLEIST, III, Linda S. Kleist, Debtor.**

**Bankruptcy No. 89–01619.**

United States Bankruptcy Court, N.D. New York.

April 6, 1990.

Terry R. Pickard, Syracuse, N.Y., Trustee.

James F. Selbach, Syracuse, N.Y., for debtors.

MEMORANDUM–DECISION, FINDINGS
OF FACT, CONCLUSIONS OF LAW
AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of an Objection filed by the Chapter 7 Trustee to the exemption of certain pension plan benefits, pursuant to Article 10–A of New York Debtor and Creditor Law (McKinney's Supp.1990) ("NYD & CL") claimed by Linda S. and William C. Kleist, III ("Debtors") in their bankruptcy case. The Court reserved decision after a hearing on December 12, 1989 and permitted both parties the opportunity to submit memoranda of law.

JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(B).

FACTS

The facts are not disputed.

The Debtors filed their joint petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on September 7, 1989. At the time of filing, Debtor, William C. Kleist, III ("Kleist") was a participant in a plan sponsored by his employer, General Electric Company, known as the "GE Savings and Security Program" ("Program"). In his schedules, he listed as exempt the amount of $12,-000.00 in the "Savings and Security Fund."

The Chapter 7 Trustee has filed a written Objection to the Debtors' claimed exemption.

In the Program document, submitted by the Debtors, the first of twenty-three sections which provide detailed information about the Program is entitled "Purpose and

Scope." The first sentence of that section reads, "[t]he GE Savings and Security Program ... provides employees ... an opportunity for convenient, regular and substantial personal savings." The Program Prospectus, also submitted by the Debtors, provides that the "Program was established to provide employees with a means of saving on a favorable and systematic basis."

The Prospectus further provides that "[t]he Internal Revenue Service has ruled that the Program and Trust qualify under Section 401(a) of the [Internal Revenue] Code." Withdrawals from sources other than deferred pay are allowed at a rate of once per year "for any reason" of funds held in trust for at least two years.

The Trustee submitted a statement of Kleist's Program account which provides in a summary manner that the "total investment value as of June 30, 1989" is the amount of $11,971. Above that figure, the amounts of "Savings" for years 1986, 1987 and 1988 are given along with "income on savings" and "proportionate company payments" which comprise the total $11,971.

Also included in Kleist's statement is a separate summary entitled "Pension Plan." That summary sets forth amounts including to-date totals for pension contributions (yearly and overall) as well as the monthly pension benefit payable to Kleist upon his retirement.

## ARGUMENTS

The Debtors maintain that the Program meets the requirements imposed by NYD & CL § 282(2) for exemptibility. They assert that the Program is a profit-sharing plan which qualifies under § 401 of the Internal Revenue Code. Second, they contend that since "contributions to the plan can come only from the debtor's wages or employee contributions, any right to withdraw funds is based upon the debtor's length of service." Debtors' Memorandum of Law at 3. The restrictions on withdrawal of pre-tax and post-tax savings, they argue, is consistent with the requirement of NYD & CL § 282(2) that payments be "on account of illness, disability, death, age or length of service."

The Debtors also contend that a debtor's right to make withdrawals is "wholly irrelevant" to whether such a plan is exemptible. They argue that it is the "nature of the contributions to the plan, not the withdrawals from the plan" which render it exempt. *Id.* at 4.

Debtors distinguish the Program from an Individual Retirement Account in that "the right to receive payments from an IRA account is not based upon illness, disability age or length of service. Contributions to or withdrawals from an IRA account do not have to have any correlation to the owners employment." *Id.* at 6.

The Trustee objects on the grounds that the Program is a savings plan, the principal of which, Kleist may invade for reasons other than illness, disability, death, age or length of service as enumerated in NYD & CL § 282(2)(e). The Trustee concedes that the Program qualifies under § 401(a) of the Internal Revenue Code. He also objects that there is not any anti-alienation/anti-assignment language associated with the Debtors' savings plan. As the nearly total withdrawal of the funds in question is restricted only by a "penalty" period of six months where no employer contributions will be credited, the Trustee contends the specific plan within the Program in which Kleist has his funds is similar to an IRA.

## DISCUSSION

Because the parties have perceived their primary contention as whether the fund claimed by the Debtors is properly within the ambit of NYD & CL § 282(2)(e), the Court will initially address that issue. The Court notes at the outset that the Trustee, as the objecting party, has the burden of proof. Bankruptcy Rule ("Bankr.R.") 4003(c). Also, exemptions are construed liberally in favor of the debtor. *In re McQueen*, 21 B.R. 736 (Bankr.D.Vt.1982).

New York has chosen to "opt out" of the Code's exemption scheme. 11 U.S.C. § 522(b)(1). Consequently, Debtors domiciled in New York are restricted to the exemptions provided by State law. NYD & CL § 284. The Debtors have claimed as

exempt the sum of $12,000.00 which, they assert, is part of a profit sharing plan from which payments are, or will be, received in accordance with NYD & CL § 282(2)(e).[1] The Court cannot agree.

As the language of NYD & CL § 282(2)(e) is nearly identical to that of its federal counterpart, Code § 522(d)(10)(E), consideration of cases examining the Code provision will be probative in the instant case. The legislative history of Code § 522(d)(10)(E) indicates that Congress' intent was to exempt such payments to the debtor where they are "akin to future earnings of the debtor." H.R. No. 95–595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. This would insure benefits for retirement, disability or termination of employment. *In re Sheridan*, 38 B.R. 52 (Bankr.D.Vt.1983).

In *In re Miller*, 33 B.R. 549 (Bankr.D. Minn.1983), the court's determination regarding the non-exemptibility of a profit sharing plan focused upon the strictness of the restraints on withdrawal of funds for the debtor's present needs. The debtor in *Miller* could withdraw funds for the purchase or. improvement of a primary residence, for college education, medical expenses or other hardship. In view of this, the court held that the plan was more akin to a savings plan than it was to future earnings. *Id.* at 551.

Also, in deciding whether payments from a profit sharing trust fell within a state exemption statute containing language very similar to NYD & CL § 282(2)(e), the court in *In re Leimbach*, 99 B.R. 796 (Bankr.S.D.Ohio 1989), examined the purpose of the plan. The court noted that, rather than providing funds for retirement, "the stated purpose for the Plan is to recognize employees' contributions to the success of the business by establishing a system of benefits." *Id.* at 802. The court further observed in denying the exemption, that "events other than retirement, such as disability or voluntary termination of employment ... may give the debtor a right to distribution of his vested interest." *Id.*

■ Thus, contrary to the Debtors' contention, a debtor's right to make withdrawals "for any reason" irrespective of retirement concerns is not "wholly irrelevant" to the Court's determination regarding the claimed exemptibility of the funds pursuant to NYD & CL § 282(2)(e). This fact, in conjunction with the Program's stated purpose to provide employees with an "opportunity for ... convenient, regular and substantial *personal savings*," (emphasis added), places Kleist's Program funds outside Congress' intended protection of funds akin to future income. Further buttressing the Court's conclusion that the Program is not intended to act as future income is the inclusion in the Kleist's summary statement of information and totals under the "Pension Plan" as separate from the Program. The existence of, and additional participation in, the Pension Plan by Kleist infers that the nature, purpose and terms of the Program are distinct from that of the Pension Plan.

Having discussed and concluded that the Debtors' claimed exemption in the amount of $12,000.00 held in the Program does not qualify as a benefit under a profit sharing or similar plan on account of illness, disability, death, age or length of service within the meaning of NYD & CL § 282(2)(e), the Court must explain why such findings do not resolve the case at bar. Though neither party has raised the issue concerning New York Civil Practice Law and Rules § 5205 (McKinney's 1978 Supp.1990) ("NYCPLR"), it appears that the provisions set forth therein are applicable in the present case.

NYD & CL § 282 lists NYCPLR § 5205 among permissible exemptions in bankruptcy for debtors domiciled in New York. Subsection (c) of NYCPLR § 5205 provides, in pertinent part, that "all trusts, custodial accounts, ... monies, assets or interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986 ... shall be conclusively presumed to

---

**1.** The 1989 amendment to subsection (e) deleted reference to payments necessary for support of

the debtor and his dependents.

be spendthrift trusts under this section and the common law of the state of New York for all purposes, including ... all cases arising under or related to a case arising under ..." the Bankruptcy Code.

The legal effect of property which is held in a spendthrift trust operates not as an exemption, but as an *exclusion* from property of the estate. *See e.g., In re Woodford,* 73 B.R. 675, 678–79 (Bankr.N.D.N.Y. 1987). Code § 541(c)(2) preserves the restrictions on the transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable non-bankruptcy law. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, *reprinted in* 1978 U.S.Code Cong. & Admin News 5963, 6325; *Regan v. Ross,* 691 F.2d 81, 85 (2d Cir.1982). Thus, the res held in a spendthrift trust which is valid under state law is specifically excluded from property of the debtor's estate.

■ It appears that the Program is swept into the purview of NYCPLR § 5205 by its rather broad language requiring only a trust or interest which is part of a plan established by a corporation which is qualified under § 401 of the Internal Revenue Code. Here, the Program funds are held in trust for Kleist's use and the Program qualifies under § 401.

"A conclusive presumption is one in which proof of basic fact renders the existence of the presumed fact conclusive and *irrebuttable.*" BLACK'S LAW DICTIONARY 1067 (5th ed. 1979) (emphasis added). By creating a conclusive presumption the legislature is not enacting a rule of evidence, but rather a substantive law. 57 N.Y.Jur.2d, Evidence and Witnesses § 112. The New York legislature chose to employ the phrase "conclusively presumed" in NYCPLR § 5205(c)(3) to insure that once a plan in question is found to factually fall within the broad parameters of that statute, a court must make a factual finding, as a matter of law, that a spendthrift trust exists.[2]

As the ultimate fact that the Program constitutes a spendthrift trust is irrebuttable, such a conclusion is mandated regardless of countervailing evidence, an abundance of which, as earlier discussed, exists in the instant case.

The reach of the "exemption" statute was vastly enhanced by the New York legislature's 1989 amendments. The pre–1989 language in subdivision (c)(2) of NYCPLR § 5205 provided that the exemption applied to any trust which was "either a Keogh (HR–10) plan or a retirement plan ..." The statute was amended to extend the exemption to "either a Keogh (HR–10), retirement or *other plan* ... (emphasis added)." A plain reading of the amended statute does not convey that "other plan" was intended to mean other *retirement* plan. It conveys, rather, that a plan, in order to fall within the exemption, need not be related to a Keogh (HR–10) nor retirement plan in form or purpose so long as it meets the other statutory criteria. Where the language of a statute is unambiguous, as is the case here, the Court's inquiry into its interpretation should not look beneath the plain meaning of the language. *See e.g., Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). If the legislature had intended to restrict the exemption to include plans which were more akin to future income, it could have employed language such as "other similar plan."[3] The use of the "other plan" language invites property such as the Kleist's savings plan into the statute's exclusionary shelter.

The potential for abuse created by the New York legislature's use of a "conclusive presumption" in this context, also a product of the 1989 amendments, is further troubling. It allows debtors to retain the freedom to withdraw their funds, while simultaneously insulating those assets from creditors. The effect of this dichoto-

---

**2.** The amendment to NYCPLR § 5205(c)(3) which provides that "[a]ll trusts, ... shall be conclusively presumed to be spendthrift trusts" became effective July 7, 1989. As the filing of a petition constitutes a "point of cleavage" at which exemptions are determined, the Debtors' filing date of September 7, 1989 entitles them to utilize the current version of the "exemption" statute. *See In re Fill,* 84 B.R. 332, 337–38 (Bankr.S.D.N.Y.1988).

**3.** *Compare* NYD & CL § 282(2)(e) which provides exemption for "all payments under a stock bonus, ... or similar plan ..."

**370**

mous treatment appears, unfortunately, to subvert the policy underlying the state spendthrift trust law, as well as the United States Bankruptcy Code's intent. *See e.g., In re Goff,* 706 F.2d 574, 588 (5th Cir.1983).

It is well-established that non-bankruptcy law will initially determine the debtor's interest in property, yet the question of what constitutes property of the estate is a federal question. *See e.g., In re Woodford, supra* 73 B.R. at 678. Here, Congress has declared, through Code § 541(c)(2), that deference will be accorded to the respective state created boundaries defining spendthrift trusts. New York has exercised its prerogative by "bootstrapping," that is, statutorily placing certain property under the control of the debtor within the protection ordinarily provided only to trusts possessing traditional spendthrift qualities.

Based upon the foregoing, the Court concludes that the Debtors' claimed $12,000.00 interest in the Savings and Security Program is not part of the estate within the ambit of Code § 541. Accordingly, the Trustee's Objection is dismissed.

IT IS SO ORDERED.