In re J.A. VOLPE, M.D. and wife, Rita Ann Volpe, Bankrupt.

NCNB TEXAS NATIONAL BANK, Marsha G. Kocurek, Appellants,

v.

J.A. VOLPE, M.D. and wife, Rita Ann Volpe, Appellees.

Civ. A. No. A–89–CA–582.

United States District Court, W.D. Texas, Austin Division.

July 30, 1990.

Joanalys B. Smith, Small, Craig & Werkenthin, Austin, Tex., for NCNB Texas Nat. Bank.

William C. Davidson, Jr., Austin, Tex., for J.A. Volpe, M.D. and Rita Ann Volpe.

Harvey D. Caughey, Austin, Tex., for Marsha G. Kocurek, trustee.

## ORDER

WALTER S. SMITH, Jr., District Judge.

This is an appeal from a final order of the United States Bankruptcy Court for the Western District of Texas denying an objection to exemptions claimed by the debtors in a Chapter 7 bankruptcy proceeding. 100 B.R. 840.

### I. *Issues and Standard of Review*

Appellants present the following issues:

1. Did the bankruptcy court err in holding that the exemption under Texas law of the debtors' qualified employee profit sharing plan is not preempted by the Employer Retirement Income Security Act ("ERISA")?

2. Did the bankruptcy court err in holding that § 42.0021 of the Texas Property Code is not preempted by ERISA?

3. Did the bankruptcy court err in holding that § 42.0021 of the Texas Property Code permits a debtor to exempt one profit sharing plan and several individual retirement accounts?

The matter was submitted to the Court below on stipulated facts, therefore, only the bankruptcy court's conclusions of law are at issue, and the matters on appeal are subject to *de novo* review. *In re Texas Research, Inc.*, 862 F.2d 1161 (5th Cir. 1989).

### II. *Statement of the Case*

Dr. J.A. Volpe and Rita A. Volpe (the "Debtors"), filed a voluntary petition for bankruptcy under Chapter 7 of the bankruptcy code on June 28, 1988. Dr. Volpe is a physician, and among the assets scheduled by the Debtors was an Austin Diagnostic Center Profit Sharing Plan Account valued at $457,865.00 (the "Plan"). The Debtors claimed this asset as exempt under 11 U.S.C. § 522(b)(2) and Texas Property Code § 42.0021. Alternatively, they claimed the Plan was not property of the bankruptcy estate.

NCNB Texas National Bank ("NCNB") filed its Objection by Creditor NCNB Texas National Bank to Debtors Claimed Exempt Personal Property on September 6, 1988. On October 11, 1988, the Chapter 7 Trustee, Marsha G. Kocurek (the "Trustee"), filed an objection to exemption, joining that filed by NCNB.

NCNB and the Trustee specifically objected to the claimed exempt Austin Diagnostic Center Profit Sharing Account. The objection was further directed to approximately seven (7) individual retirement accounts totaling approximately $21,000 listed on Debtors' Schedule B(4)(b), and to Debtors' profit sharing plan in the amount of $458,000 listed on Schedule B(4). The basis for the objection to these accounts was that § 42.0021 of the Texas Property Code provides an exemption for only a sin-

gle account or plan, and that the exemption of the profit sharing plan was preempted by ERISA.

The bankruptcy court ruled that the Debtors' profit sharing plan and individual retirement accounts ("IRA's") were exempt property pursuant to Tex.Prop.Code Ann. § 42.0021 and that ERISA does not preempt § 42.0021 because the Texas statute does not purport to regulate the terms and conditions of an employee benefit plan, it does not affect the relationship between the principal ERISA entities, and, as a result, the statute relates to an employee benefit plan in too remote, tenuous and peripheral a manner to be preempted by ERISA. It is from this determination that the Trustee and NCNB have appealed.

### III. *Discussion*

#### A. Preemption.

Resolution of this matter involves an analysis of the interplay between ERISA, the Bankruptcy Code, and the Texas Property Code.

The Bankruptcy Code has two provisions important to this case. Under the Code, a debtor may retain property free from the claims of creditors if such property is not property of the estate under § 541.

Section 541 of the Bankruptcy Code provides that upon commencement of an action in bankruptcy, all property of the debtor becomes property of the bankruptcy estate. An exception is found in § 541(c)(2), which provides:

A restriction on a transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

Once property is determined to be part of the bankruptcy estate, the debtor is allowed to exempt from it certain eligible property. Section 522(b) of the Bankruptcy Code provides a debtor a choice between: (1) the bankruptcy exemption enumerated in Section 522(d) of the Bankruptcy Code; or (2) the applicable state law exemptions, and any other property that is exempt under federal law, other than Section 522(d). 11 U.S.C. § 522(b)(2)(A). The choice of exemptions is available unless the state has "opted-out" of the federal bankruptcy exemption pursuant to Section 522(b) of the Bankruptcy Code. If a state has "opted-out," a debtor is limited to the applicable state exemption and the exemptions provided by other non-bankruptcy federal law. 11 U.S.C. § 522(b). Texas has not exercised its rights to opt-out of the federal bankruptcy exemptions.

Section 522(b) provides:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Bankruptcy Rules, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or in the alternative,

(2)(A) any property that is *exempt under Federal law*, other than subsection (d) of this section, *or state or local law* that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; (emphasis added),

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest

as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

The State of Texas has not enacted any law to preclude its debtors from choosing between "state exemptions" or the "federal exemptions" of Code § 522(d). Chapter 42 of the Texas Property Code provides, in pertinent part, that eligible personal property is "... exempt from attachment, execution, and seizure for the satisfaction of debts, except for incumberances properly fixed on the property." Section 42.0021 was added in 1987, effective September 1, 1987, and provides:

(a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986. (Footnote citing 26 U.S.C.A. § 1 et seq). A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974. (Footnote citing 29 U.S.C.A. § 1001 et seq).

(b) Contributions to an individual retirement account that exceed the amounts deductible under the applicable provisions of the Internal Revenue Code of 1986 and any accrued earnings on such contributions are not exempt under this section unless otherwise exempt by law.

This amendment was in response to the Fifth Circuit's opinion, *In re Goff,* 706 F.2d 574 (5th Cir.1983), which held that a debtor's interest in a self-employed retirement ("KEOGH") plan did not fall under the exception of "applicable non-bankruptcy law" in Section 541(c)(2). The Fifth Circuit held that "Congress did not evidence an intent, by reference to 'applicable non-bankruptcy law' to include an ERISA plan exemption." *Id.* at 580. The debtors in that case argued that the reference in Section 541(c)(2) to applicable non-bankruptcy law was intended to reach broadly and contended that the section exempted all pension trusts qualified under ERISA due to ERISA's restriction on assignment and alienation of qualified trusts. The Fifth Circuit concluded that the reference in Section 541(c)(2) to "applicable non-bankruptcy law" was an acknowledgment of traditional state spendthrift law, and not of ERISA.

Although the debtors did not argue that their KEOGH plan was subject to exemption under the "state exemptions" provision of Section 522(b), the Fifth Circuit concluded that "Congress did not intend to include ERISA-qualified plans among those items otherwise 'exempt under federal law,' pursuant to 11 U.S.C. § 522(b)(2)(A)." *Id.* at 585. Only if the Debtor's interest in the KEOGH plan met the "spendthrift trust" exemption of Section 541(c)(2) could it be exempted.

The Court based its conclusion on two primary factors—the legislative history of Section 522(b)(2)(A) and the differences in the type of property covered by ERISA and the various federal statutes listed in the legislative history.

The Court noted that the legislative history provided an illustrative list of property which might be exempt, and concluded that Congress' failure to include ERISA in this illustrative list was "highly probative of congressional intent" to not include ERISA within the group of federal law based exemptions under Section 522(b)(2)(A). *In re Goff,* 706 F.2d at 585.

Apparently, the amendment to Section 42.0021 of the Texas Property Code was intended to "move" ERISA-qualified plans

out of the "federal law" portion of Bankruptcy Code Section 522(b)(2)(A) and "convert" such plans to "state law" and therefore subject to the "state exemption" provisions. Because Section 42.0021 specifically refers to benefits received from an ERISA-covered plan, the major question becomes whether this state law has been preempted by ERISA.

■ In determining whether federal law preempts a state statute, the focus is upon Congress' intent in enacting the federal statute at issue. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). In a preemption analysis, "the purpose of Congress is the ultimate touchstone." *Malone v. White Motor Corp*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).

> Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained, in its structure and purpose."

*Fidelity Federal Savings & Loan Association v. De La Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), *citing Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977).

ERISA was enacted in response to national concern about loss of private pension benefits resulting from financial difficulties of employers and mobility of employees.

ERISA's stated purpose is:

> To assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.

S.Rep. No. 127, 93rd Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4849.

The Act is designed "to promote the interests of employees and their beneficiaries in employee benefit plans. The term 'employee benefit plan' is defined as including both pension plans and welfare plans."

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 90–91, 103 S.Ct. at 2896 (citations omitted).

> The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting disclosure, and fiduciary responsibility, for both pension and welfare plans.

*Id.* at 91, 103 S.Ct. at 2896.

To eliminate state interference with the accomplishment of ERISA's goals, Congress included express preemption language in the Act. Section 514(a) provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 96–97, 103 S.Ct. at 2900.

■ The question at hand is whether the preemption provisions of ERISA express Congressional intent to preempt Section 42.0021—specifically, whether Section 42.0021 relates "to any employee benefit plan."

Although Section 42.0021 does not expressly refer to an ERISA employee benefit plan, the statute's reference to the "applicable provisions of the Internal Revenue Code of 1986" by necessity incorporates ERISA in its substantive test for exemption qualifications. See generally, 29 U.S.C. § 1002(2)(A), Treas.Reg. § 1.401(b)(1)(i) and 26 U.S.C. § 401. The connection between Section 42.0021 and ERISA is apparent—to qualify for the exemption, a plan must generally qualify under ERISA. However, the Court agrees with the Bankruptcy Court's determination that Section 42.0021 is not preempted by ERISA despite this clear connection, as Section 42.0021 does not "relate to" any employee benefit plan.

> Some state actions may affect employee benefit plans in too tenuous, remote, or

peripheral a manner to warrant a finding that the law "relates to" the plan.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

Section 42.0021 does nothing more than define a class of property which can be exempted should a debtor choose the state exemptions in a bankruptcy proceeding. The statute exempts benefits receivable under an ERISA-covered plan, but refers to an employee benefit plan only in a definitional sense. "ERISA's preemption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans*.'" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (emphasis in original).

> The words "benefit" and "plan" are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another. Given the basic difference between a "benefit" and a "plan," Congress' choice of language is significant in its preemption of only the latter.

*Id.* 107 S.Ct. at 2216.

The Congressional intent in the context of preemption was to provide uniformity in the administration of employee benefit plans, and to protect employers from state laws that create the prospect that an employer's administrative scheme "would be subject to conflicting requirements." *Id.* 107 S.Ct. at 2216.

> It is for this reason that Congress preempted state laws relating to *plans*, rather than simply to *benefits*. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

*Id.* 107 S.Ct. at 2217 (emphasis in original). ERISA preemption analysis "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. [504] at 522, 101 S.Ct. [1895] at 1905 [68 L.Ed.2d 402]. The argument that ERISA pre-empts state laws relating to certain employee benefits, rather than to

employee benefit *plans*, is refuted by the express language of the statute, the purposes of the pre-emption provision, and the regulatory focus of ERISA as a whole. If a state creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems.

*Id.* 107 S.Ct. at 2221 (emphasis in original).

A review of Section 42.0021 indicates that it merely defines a certain category of exempt property. It does not attempt to regulate the terms and conditions of an employee benefit plan; nor does it affect the relationship between the principal ERISA entities. *See Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir.1986). Any relationship to ERISA is merely tangential, and is too tenuous, remote or peripheral to "relate" within the meaning of 29 U.S.C. § 1144(a).

The Supreme Court's opinion in *Mackey v. Lanier Collections Agency and Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1989), is distinguishable. The *Mackey* opinion addressed the relationship of ERISA to state garnishment proceedings. Such proceedings have a possibility of a greater impact on a *plan*, since these proceedings are directed at the fund holder rather than the fund beneficiary. The classification scheme in Section 42.0021 would have a minor impact, if any, on any employee benefit plan.

**B. One–Plan Issue.**

 Appellants next object to the Bankruptcy Court's determination that several of the Debtor's individual accounts could be exempted as a single retirement plan under Section 42.0021 of the Texas Property Code.

A review of Texas law reveals a liberal interpretation with regard to exemption claims, and supports the Bankruptcy Court's determination that the Debtors' separate accounts should be considered *one* retirement plan. Further, the evidence before the Court was that Mrs. Volpe owned one IRA which was held in separate bank accounts. The Court, therefore, finds no

error in the Bankruptcy Court's ruling. Accordingly, it is

ORDERED that the decision of the Bankruptcy Court is AFFIRMED.