In re William J. WIMMER and Cynthia S. Wimmer, Debtors.

No. 91–1021.

United States District Court, C.D. Illinois.

July 19, 1991.

Charles E. Covey, Peoria, Ill., for appellant.

Andrew W. Covey, Peoria, Ill., for appellee.

## ORDER

MIHM, District Judge.

Before the Court is an appeal by William J. Wimmer and Cynthia S. Wimmer, Debtors, from a final order of the Bankruptcy Court for the Central District of Illinois. This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a). This Court affirms the order of the bankruptcy court.

## BACKGROUND

The Debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code on December 11, 1989. (R. 1).[1] On the date of the bankruptcy, Cynthia S. Wimmer held an interest in a 401(k) plan sponsored by her former employer, Ruppman Marketing Services, Inc. (R. 8). This retirement plan is subject to and qualified under the requirements of the Employee Retirement Income Security Act of 1934 (ERISA) and the Internal Revenue Code of 1986. (R. 8). As of the date of the bankruptcy, Cynthia

---

1. "R" refers to the record on appeal and the following number refers to the document number given to the particular document on appeal.

Wimmer had terminated her employment with Ruppman and was entitled to a lump sum distribution on demand of at least $8,526.92. (R. 8). However, on the date of the bankruptcy, the money remained in the Ruppman Marketing Services, Inc. employee thrift and savings plan. The Debtor claimed as exempt her interest in the retirement plan under § 12–1006 of the Illinois Code of Civil Procedure. Ill.Rev.Stat. ch. 110, § 12–1006(a). She also claimed that the retirement fund was exempt under ERISA § 206(d)(1) on the theory that this section created a federal non-bankruptcy exemption for money in ERISA-qualified plans. The trustee objected to her claim of an exemption and the issue was briefed. (R. 6, 7, 9, 10, 11).

Thereafter, on September 12, 1990, the bankruptcy court issued its written opinion. (R. 12). The bankruptcy court held that ERISA preempted the Illinois exemption law (Ill.Rev.Stat. ch. 110, § 12–1006) regarding retirement plan. Further, the bankruptcy court ruled that Congress only intended to exclude traditional spendthrift trusts from the bankruptcy estate under the Bankruptcy Code; therefore, the Court concluded that the attempt by Illinois to turn all qualified retirement plans into spendthrift trusts failed to exclude these plans from the bankruptcy estate unless they qualified as traditional spendthrift trusts. (R. 12). However, the bankruptcy judge did not rule on whether ERISA creates a federal non-bankruptcy exemption. The Debtors then filed a motion to amend judgment (R. 14) and the bankruptcy judge, in an opinion dated January 3, 1991, (R. 18) refused to reverse his earlier decisions and further held that ERISA does not create a federal non-bankruptcy exemption. (R. 18). This appeal followed.

A. *Is Illinois Revised Statutes ch. 110, § 12–1006(c), Which Defines Spendthrift Trusts Preempted by the Bankruptcy Code?*

▆ Under 11 U.S.C. § 541(a) of the Bankruptcy Code, the bankruptcy estate is comprised of all legal and equitable interests of the debtor in property subject only to the exception of 11 U.S.C. § 541(c)(2).

*Matter of Nichols,* 4 B.R. 711 (Bankr. E.D.Mich.1980). Section 541(c)(2) of the Bankruptcy Code provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). A retirement plan which constitutes a spendthrift trust under state law is not the property of the bankruptcy estate by operation of § 541(c)(2). *See, Matter of LeFeber,* 906 F.2d 330, 331 (7th Cir.1990); *In re Silldorff,* 96 B.R. 859 (Bankr.C.D.Ill.1989); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *In re Kincaid,* 917 F.2d 1162 (9th Cir.1990).

▆ In the instant case, the Debtors admit that the retirement plan does not constitute a spendthrift trust under Illinois common law because Cynthia Wimmer had the right to withdraw her money from the plan upon termination of her employment. *In re Silldorff,* 96 B.R. 859. In fact, the Debtors concede that, because Cynthia Wimmer had terminated her employment with Ruppman before the bankruptcy petition was filed, she had the immediate right to withdraw the money. However, the Debtors point out that the Illinois common law concerning spendthrift trusts was amended by the Illinois legislature by the enactment of § 12–1006(c) of the Illinois Code of Civil Procedure. That section now states that qualified retirement plans are conclusively presumed to be spendthrift trusts under the law of Illinois. This section states as follows:

A retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, is conclusively presumed to be spendthrift trust under the law of Illinois.

Because the Debtor's retirement plan constitutes a spendthrift trust as defined under § 12–1006(c) of the Illinois Code of Civil

Procedure, the Debtor asserts that it is excluded from the bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code.

The trustee asserts that the bankruptcy court was correct in finding that the exception created in § 541(c)(2) of the Bankruptcy Code is limited to true "spendthrift trusts" as traditionally viewed. *Matter of Goff,* 706 F.2d 574, 582–586 (5th Cir.1983); *In re Dagnall,* 78 B.R. 531, 533–534 (Bankr.C.D.Ill.1987); *Matter of Osburn,* 56 B.R. 867, 872–873 (Bankr.S.D.Ohio 1986).

As the trustee correctly notes, the holding in these cases is supported by the legislative history as discussed in the above cited cases. Further, the plain language of § 541(c)(2) clearly contemplated that the exception would apply only where there was a restriction on the transfer of the beneficial interest as in the context of the traditional spendthrift trust under common law.

In addition, the trustee notes that case law from this Court supports the proposition that § 541(c)(2) was only intended to apply to spendthrift trusts which were traditionally beyond the reach of creditors under state law. Specifically, this Court has previously stated:

> In other words, the court in *Goff* concluded that Congress intended by its reference to "applicable non-bankruptcy law" to exempt from the estate only those spendthrift trusts traditionally beyond the reach of creditors under state law, thus continuing the previously recognized exemption for spendthrift trusts under the old Bankruptcy Act.

*See, In re Silldorff,* 96 B.R. 859, 863. This Court then went on to discuss the requirements which were necessary to qualify as a traditional spendthrift trust under Illinois law. This Court stated:

> A spendthrift trust is a trust created to provide a fund for the maintenance of another while protecting the fund against the intended beneficiary's improvidence or incapacity. (Citation omitted). *To qualify as a spendthrift trust, the beneficiary thereof must show that he*

> *or she cannot alienate his or her interest therein and that he or she does not possess exclusive and effective control over distribution or termination of the trust. (Citation omitted). Of particular interest is the extent of the dominion in control which the beneficiary exercises over the plan's assets.* (Citations omitted). It is also accepted that the settler of the trust cannot establish the trust for his or her own benefit.

*Id.* at 864 (emphasis added). Further, this Court noted that:

> Just because a plan is ERISA-qualified does not mean the funds contained therein are protected from manipulation. In fact, in the appellate court cases considering this issue, the plans in question were all ERISA-qualified. *If a bankruptcy trustee can never reach funds held in an ERISA-qualified pension plan, then there is too much room for manipulation by a participant anticipating bankruptcy. On the other hand, if creditors were always able to reach the funds, ERISA's protection of retirement plans would be impermissibly diluted. The spendthrift trust rule allows for consideration of both statutory schemes, protecting debtor and creditor alike.*

*Id.* at 863 (emphasis added).

In this case, this Court finds that it is unnecessary to determine whether § 541(c)(2) of the Bankruptcy Code is limited in its application to true spendthrift trusts because Cynthia Wimmer had no restrictions on her ability to obtain or transfer the funds in her pension fund. As the Debtors note, it is true that ERISA protects Cynthia Wimmer's pension funds from attachment or garnishment under state law until she removes the funds from the pension plan. *See, Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 2185–2191, 100 L.Ed.2d 836 (1988); 29 U.S.C. § 1056(d)(1). However, this Court believes that the legislative history and the plain intent of § 541(c)(2) is to require a restriction on the debtor's ability to transfer his or her beneficial interest. Without a restriction on

Cynthia Wimmer's ability to transfer her beneficial interest after she terminated her job, this Court does not believe that her interest can be excluded from the bankruptcy estate.

The Debtor points out that the Seventh Circuit has upheld a statute from Indiana which it asserts is similar to the Illinois statute. *See, In re LeFeber,* 906 F.2d 330 (7th Cir.1990).

This Court does not believe that the *LeFeber* case leads to the result suggested by the Debtor in this case. *See, In re Wimmer,* 121 B.R. 539, 544–545 (Bankr.C.D.Ill. 1990). In *LeFeber,* a retiree was receiving a pension of $1,000 per month. The pension allowed the debtor to make revocable assignments of 10% of his benefits, and the debtor could not make an irrevocable assignment of any portion of his benefits. Under these circumstances, the Seventh Circuit held that the pension plan still qualified as a spendthrift trust.

As the court in *In re Gifford,* 93 B.R. 636, 639 (Bankr.N.D.Ind.1988) noted, the Indiana statute only did away with the first requirement of a valid spendthrift trust. However, the second and crucial third requirements for spendthrift trusts were left intact by the Indiana law. *Id.* at 639–640; *see also, In re Tomer,* 117 B.R. 391, 393–397 (Bankr.S.D.Ill.1990). This Court simply does not believe that *LeFeber* establishes that Illinois can exclude a pension from a bankruptcy estate which contains no restriction on transfer and over which the Debtor exercises 100% control. Simply stated, Illinois cannot define a spendthrift trust any way it pleases.

The Debtor maintains, however, that other courts have upheld statutes similar to § 12–1006(c) of the Illinois Code of Civil Procedure in other states. *See, In re Balay,* 113 B.R. 429, 440–443 (Bankr.N.D.Ill. 1990); *In re Block,* 121 B.R. 810 (Bankr. C.D.Ill.1990); *In re Kleist,* 114 B.R. 366 (Bankr.N.D.N.Y.1990).

In dicta, the court in *Balay* concluded that § 12–1006(c) did not abrogate the common law of spendthrift trusts in Illinois because the plan must qualify as a retirement plan under the applicable provisions of the Internal Revenue Code. The court noted:

> To satisfy the retirement of ERISA and to qualify for tax advantages under the IRC, a pension plan must contain anti-alienation and anti-assignment provisions that protect the plan assets from the creditors of the plan participants and their beneficiaries. 29 U.S.C.A. § 1056(d); 26 U.S.C.A. § 401(a)(13). In sum, paragraph 12–1006(c) of the Illinois Act has adopted the trust attributes of ERISA as its own in defining what constitutes a spendthrift trust under Illinois law.

*Balay,* 113 B.R. at 442.

However, as the bankruptcy court in this case noted:

> *That all ERISA-qualified pension plans are spendthrift trusts is not necessarily or universally true, as attested by the myriad of cases finding pension plans not to be excluded from the bankruptcy estate.* There is but one reason for the enactment of the Illinois statute. That is to exclude all pension plans of Illinois residents from the bankruptcy estate, whether or not those plans are true spendthrift trusts. This is a bold attempt to undermine § 541(c)(2) of the Bankruptcy Code which cannot succeed.

*In re Wimmer,* 121 B.R. at 543 (emphasis added). Illinois has attempted by amending its spendthrift trust law to create a larger exception to § 541(c)(2) of the Bankruptcy Code than was intended by Congress to be allowable under this exception.

As far as the *Block* case is concerned, this case contains no analysis and relies on *Balay* and *LeFeber* which have been discussed earlier. *See, In re Block,* 121 B.R. 810.

In *Kleist,* the court interpreted a New York statute which defined all qualified plans to be spendthrift trusts. *Kleist,* 114 B.R. 366. The *Kleist* court noted:

> It is well-established that non-bankruptcy law will initially determine the debtor's interest in property, yet the question of what constitutes property of the estate is a federal question. *See, e.g., In re*

*Woodford,* supra, 73 B.R. [675] 678 [Bankr.N.D.N.Y.1987]. Here, Congress has declared, through Code § 541(c)(2), that deference will be accorded to the respective state created boundaries defining spendthrift trusts. *New York has exercised its prerogative by "bootstrapping" that is, statutorily placing certain property under the control of the debtor within the protection ordinarily provided only to trusts possessing traditional spendthrift qualities.*

*Id.* at 370 (emphasis added). Apparently, the *Kleist* court believed that Congress, by enacting § 541(c)(2), intended to give states the prerogative to define a spendthrift trust in any manner the states felt was appropriate. Such a conclusion is contrary to the legislative intent of Congress as expressed in the legislative history of this section and contrary to the plain language of the statute. *See, Matter of Goff,* 706 F.2d at 582–586; *In re Dagnall,* 78 B.R. at 533–534; *Matter of Osburn,* 56 B.R. at 872–873.

The following statement from the *Kleist* opinion summarizes the reasons why this Court rejects the approach suggested by the Debtors. The Court stated:

> The potential for abuse created by the New York legislature's use of a "conclusive presumption" in this context, also a product of the 1989 amendments, is further troubling. *It allows debtors to retain the freedom to withdraw their funds, while simultaneously insulating those assets from creditors. The effect of this dichotomous treatment appears, unfortunately, to subvert the policy underlying the state's spendthrift trust law, as well as the United States Bankruptcy Code's intent. See, e.g., In re Goff,* 706 F.2d 574, 588 (5th Cir.1983).

*Id.* at 369–370 (emphasis added).

The Debtors also assert that other jurisdictions have held that an employee's ability to terminate an employment trust of which he is the beneficiary by quitting his job does not disqualify the trust as a spendthrift trust under § 541(c)(2) of the Bankruptcy Code. *See, In re Boon,* 108 B.R. 697, 708 (Bankr.W.D.Mo.1989); *In re Wal-*

*lace,* 66 B.R. 834, 841 (Bankr.E.D.Mo.1986); *In re Forbes,* 65 B.R. 58, 59 (Bankr.S.D.Fla.1986); *In re West,* 64 B.R. 738, 743 (Bankr.D.Ore.1986); *Matter of Jones,* 43 B.R. 1002 (Bankr.N.D.Ind.1984).

This argument begs the question in this case because Cynthia Wimmer did not merely have the ability to terminate her job in this case. She had already terminated her job before filing bankruptcy and had immediate access to funds.

■ In sum, this Court finds that the Debtor has not shown that there was any meaningful restriction on the transfer by her of her beneficial interest of the debtor in a trust that was enforceable under applicable non-bankruptcy law pursuant to 11 U.S.C. § 541(c)(2). Therefore, this Court finds that it is unnecessary to consider whether § 12–1006(c) of the Illinois Civil Practice Act is impliedly preempted by § 541(a) of the Bankruptcy Code. This Court simply concludes that § 541(c)(2) of the Bankruptcy Code does not create and was not intended to create an exclusion for spendthrift trusts which are defined as broadly as the Illinois statute chose to define them.

**B.** *Is § 12–1006(a) of the Illinois Code of Civil Procedure Preempted by ERISA?*

■ 29 U.S.C. § 1144(a) states in relevant part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(b) of this title.

Section 12–1006(a) of the Illinois Civil Practice Act provides:

> A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i)

is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

Because § 12–1006(a) relates to an employee benefit plan, the trustee asserts that it is preempted by ERISA. The leading case on preemption is *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey*, a Georgia judgment creditor garnished various debtor's interests in ERISA-qualified employee welfare benefit plans. *Mackey*, 108 S.Ct. at 2184. Georgia had enacted a statute barring the garnishment of funds of employee benefit plans which were subject to ERISA, including both welfare and pension plan. *Id.* at 2184–2185. The Supreme Court held that the Georgia statute which singled out ERISA employee welfare benefit plans for different treatment under state garnishment procedures was preempted under 29 U.S.C. § 1144(a). *Id.* at 2185.

The Debtor argues that this case is distinguishable from *Mackey* because this case involves a pension plan rather than a welfare plan. The Debtor asserts that ERISA pension plans, unlike ERISA welfare plans, contain language that prohibits the alienation or garnishment by creditors. *See*, 29 U.S.C. § 1056(d)(1). Thus, the Debtor asserts that a state law which simply provides that ERISA pension plans are exempt in bankruptcy is totally consistent with ERISA and does not conflict in any way with any provision of ERISA.

This Court rejects this argument. As the Supreme Court stated in *Mackey*:

Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute.

*Id.* 108 S.Ct. at 2188. The fact that the Illinois statute may be consistent with ERISA is irrelevant. The Supreme Court noted that:

The preemption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements. (Citation omitted).

*Id.* at 2185.

Furthermore, the Illinois statute in this case clearly "relates to" an employee benefit plan under 29 U.S.C. § 1144(a). In defining what relates to an employee benefit plan, the Supreme Court in *Mackey* stated:

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." (Citation omitted). On several occasions since our decision in *Shaw* [*v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490] we have reaffirmed this rule, concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). (Citations omitted). *In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are preempted under § 514(a).* (Citations omitted).

*Id.* 108 S.Ct. at 2185. Thus, this Court rejects the holding of the district court in *In re Volpe*, 120 B.R. 843 (Bankr.W.D.Tex. 1990) and the cases following *Volpe*. In sum, this Court affirms the bankruptcy court's finding that § 514(a) of ERISA preempts § 12–1006(a) of the Illinois Code of Civil Procedure because it is clear that this Illinois law was attempting to affect employee benefit plans.

C. *Does ERISA Constitute Applicable Non–Bankruptcy Law as Set Forth Under § 541(c)(2) of the Bankruptcy Code so that ERISA–Qualified Retirement Plans are Excluded From the Bankruptcy Estate?*

Section 541(c)(2) of the Bankruptcy Code, which was quoted earlier in this opinion, excludes certain interests from the bankruptcy estate under the language "applicable non-bankruptcy law." *See*, 11 U.S.C. § 541(a)(2). The bankruptcy court

determined that this section only referred to state spendthrift trust law and, this Court has herein rejected the argument that a state could redefine spendthrift trust law in any way which essentially allowed the beneficiary to transfer the assets in the trust without restriction, as in this case.

The Debtor additionally asserts that the entire Employment Retirement Income Security Act constitutes "applicable non-bankruptcy law" under § 541(c)(2), so that all qualified ERISA retirement plans are excluded from the bankruptcy estate. The Debtor notes that the recent cases of *In re Moore*, 907 F.2d 1476 (4th Cir.1990) and *In re Lucas*, 924 F.2d 597 (6th Cir.1991) held that ERISA was "applicable non-bankruptcy law" under § 541(c)(2) of the Bankruptcy Code. The courts in those cases reasoned that the unambiguous terms of § 541(c)(2) could apply to ERISA; therefore, those courts determined that it was inappropriate to narrowly construe the language of the section based upon the legislative history.

Initially, this Court would note that, even if this Court were to adopt the minority position of *Lucas* and *Moore*, the present case is distinguishable from those cases. In *Lucas*, the trustee sought to recover distributions to the debtor from the pension fund after the bankruptcy petition was filed. *Lucas*, 924 F.2d at 598. In *Moore*, the trustee sought the turn over of the bankrupt's interest in the profit sharing and pension plan. *Moore*, 907 F.2d at 1477. In this case, the Debtor had terminated her employment as of the date of the bankruptcy and was already entitled to a lump sum distribution on demand of at least $8,526.92, and there was no restriction on the Debtor's ability to transfer the funds. *See, Richardson v. TIAA/CREF*, 123 B.R. 540, 543–544 (Bankr.E.D.N.C.1991).

In addition, the majority of cases have held that the language "applicable non-bankruptcy law" under § 541(c)(2) refers only to state spendthrift trust law. *See, In re Daniel*, 771 F.2d 1352, 1360 (9th Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.

1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *Regan v. Ross*, 691 F.2d 81 (2nd Cir.1982); *In re Brooks*, 844 F.2d 258 (5th Cir.1988); *In re Swanson*, 873 F.2d 1121 (8th Cir.1989). Furthermore, in *In re Silldorff*, 96 B.R. 859 (Bankr.C.D.Ill.1989), this Court followed the majority rule given in the above cases. Until this Court is persuaded that the reasoning of *Silldorff* is wrong or until there is contrary authority in the Seventh Circuit, this Court believes that it should let its previous decision stand. *Id.* at 862–864.

Moreover, this Court would note that the decision in the *Moore* case has appropriately been criticized. *See, Matter of Velis*, 123 B.R. 497, 506, 508 (Bankr.D.N.J.1991). This Court would further note that *Moore* seems to assume that ERISA is a law which itself provides an adequate restriction on the transfer of pension interest. In actuality, ERISA only requires that some plans contain anti-alienation provisions in order to be tax qualified. Not all ERISA qualified plans include an anti-assignment clause. *See, In re Cheaver*, 121 B.R. 665 (Bankr.D.Colo.1990). Thus, the Court concludes that ERISA does not constitute "applicable non-bankruptcy law" under § 541(c)(2).

**D.** *Does 29 U.S.C. § 1056(d) Create a Federal Non–Bankruptcy Exemption for ERISA–Qualified Retirement Plans Based Upon 11 U.S.C. § 522(b)(2)(A)?*

■ Section 522(b)(2)(A) of the Bankruptcy Code provides in relevant part:

(b) Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph 1 or, in the alternative, paragraph 2 of this subsection ... Such property is—

\*   \*   \*   \*   \*   \*

(2)(A) any property that is exempt under federal law, other than subsection (d) of this section, or state or local law that is applicable on the date of the filing of the petition. ...

Under this section, the Bankruptcy Code allows a debtor to exempt any property which is exempt under federal law. The Debtor in this case maintains that ERISA is such other federal law because all ERISA-qualified plans must provide that:

Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

*See,* 29 U.S.C. § 1056(d)(1). The Debtor notes that the leading case supporting this position is *In re Komet,* 104 B.R. 799 (Bankr.W.D.Tex.1989).

However, most of the federal circuits which have considered this issue have found that ERISA does not create a federal non-bankruptcy exemption. *See, Matter of Goff,* 706 F.2d 574; *In re Graham,* 726 F.2d 1268; *In re Lichstrahl,* 750 F.2d 1488; *In re Daniel,* 771 F.2d 1352. The above courts reasoned that, because ERISA was not included as an exempt law under the illustrative list of laws in the legislative history, and because Congress specifically referred to ERISA where it wanted to in the Bankruptcy Code, it was highly unlikely that Congress intended ERISA to be included as an exemption when Congress remembered to mention less comprehensive and less well known statutes in the legislative history of the statute.

In response, the Debtors assert that all of the above circuit court cases which opposed *Komet* and its progeny were decided before the Supreme Court decision in *Mackey v. Lanier Collection Agency,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) and *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The Debtors assert that the distinction between ERISA welfare benefit plans and ERISA pension plans is that Congress did not prohibit the garnishment of ERISA welfare benefit plans, but it did bar the garnishment or alienation of ERISA pension plans. *See, Mackey,* 108 S.Ct. at 2188–2189; *Guidry,* 110 S.Ct. at 685.

However, as the Court noted in *In re Velis,* 123 B.R. 497, 507–508, the fact that an ERISA-qualified pension plan is not subject to garnishment in state court is irrelevant to the treatment of an ERISA-qualified plan under the Bankruptcy Code. One court has stated:

The fact that ERISA may insulate plan benefits outside of bankruptcy did not lead the court in *Goff* to create an exemption within the meaning of § 522(b)(2)(A). *Whether such an exemption was intended was determined as a matter of bankruptcy law. Mackey,* therefore, does not disturb the holding in *Goff* since this holding is necessarily limited to state law pursuant to 29 U.S.C. § 1144(d).

*In re Dyke,* 99 B.R. 343, 347 (Bankr. S.D.Tex.1989), *rev'd on other grounds,* 119 B.R. 536 (Bankr.S.D.Tex.1990) (emphasis added). *See also, In re Martin,* 119 B.R. 297, 301–302 (Bankr.N.D.Fla.1990).

CONCLUSION

Based on the foregoing, this Court AFFIRMS the order of the bankruptcy court.